**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 07-09-01 (MML) |
| | : | |
| | : | |
| JOHN R. KRAMER, and | : | |
| CARLOS ORTIZ | : | |

**UNITED STATES' OBJECTION TO DEFENDANTS' MOTION TO COMPEL DISCLOSURE OF EXCULPATORY AND IMPEACHMENT INFORMATION**

Defendants have filed a joint motion to compel the United States to: (1) disclose agents' handwritten notes of the nine interviews of John Celona, and (2) identify which specific statements made by John Celona are lies ("motion to compel"). For the reasons stated in the accompanying memorandum of law being filed simultaneously herewith, the United States objects to defendants' motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN

GERARD B. SULLIVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
Gerard.Sullivan@usdoj.gov

WILLIAM M. WELCH, II
Chief, Public Integrity Section

/s/ ANNALOU TIROL

______________________________
ANNALOU TIROL
Trial Attorney
Criminal Division
1400 New York Avenue N.W.
Washington, D.C. 20530
AnnaLou.Tirol2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2007, I caused the within Government's Objection to Defendant's Motion to Compel Disclosure of Exculpatory and Impeachment Information to be filed electronically and is available for viewing and downloading from the ECF system.

Notification by first class mail, postage prepaid:

David B. Fein, Esq.
Wiggin and Dana LLP
400 Atlantic Street
Stamford, CT 06911

Mark L. Smith
Law Offices of Mark L. Smith
176 Eddie Dowling Highway, Suite 101
North Smithfield, RI 02896

Thomas R. Kiley, Esq.
Cosgrove, Eisenberg and Kiley
One International Place, Suite 1820
Boston, MA 02110

Peter DiBiase, Esq.
91 Friendship Street, 3rd Floor
Providence, RI 02903

/s/ GERARD B. SULLIVAN

GERARD B. SULLIVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - Phone
(401)709-5001 - Fax
Gerard.Sullivan@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 07-09-01 (MML) |
| | : | |
| | : | |
| JOHN R. KRAMER, and | : | |
| CARLOS ORTIZ | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO COMPEL DISCLOSURE OF EXCULPATORY AND IMPEACHMENT INFORMATION**

## I. Introduction

Defendants John Kramer and Carlos Ortiz have filed a motion to compel: (1) production of agents' notes, and (2) identification of statements made by John Celona ("Celona") that are lies ("motion to compel"). Specifically, defendants request that the United States: (1) produce the handwritten notes of all the agents who interviewed Celona on nine separate occasions; and (2) identify all specific statements that Celona made that can be characterized as lies.

The United States agrees, as is evident under applicable law, that it must provide exculpatory and impeachment evidence. The United States has complied with and continues to comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The United States is also cognizant of its continuing obligation to produce exculpatory evidence should it become aware of such. However, as explained below, there is no legal requirement that the United States produce the categories of documents demanded by the defendants. Instead, through these motions, defendants seek inappropriate access to government notes and work product in order to conduct their own

exploration into whether any exculpatory or impeachment information has been withheld.

Moreover, the United States has already twice reviewed the notes pursuant to Court Order to ensure that any and all exculpatory or impeachment information contained in the categories requested have been produced in discovery and, as a result of those examinations, did in fact produce some agent notes. The United States is further willing to submit the agent notes for *in camera* review. Accordingly, the United States requests that defendants' motion to compel be denied. If, however, the Court overrules the government's objection with regard to the agent notes, the government requests, in the alternative, that the Court conduct its own in camera review of those notes before making a final determination as to whether they should be turned over to the defendants.

## II. <u>Status of Discovery</u>

On January 18, 2007, a Grand Jury returned an Indictment charging defendants John R. Kramer and Carlos Ortiz with conspiracy to commit honest services mail fraud, honest services mail fraud, and bribery, in violation of 18 U.S.C. § 2, 371, 666, 1341, and 1346. Defendants entered a not guilty plea on January 30, 2007.

Since arraignment, the United States has agreed to provide open file discovery and, without waiving any of its rights or privileges, the United states has been continuously providing more discovery than it is legally required to produce and has produced that discovery earlier than required. The United States has complied with Rule 16 of the Federal Rules of Criminal Procedure and the Court's standard pretrial discovery order and has produced voluminous discovery to the defendants in electronic format. In addition, the United States made available to the defendant other documents that even possibly bear some relation to this case, but which were

not produced because they do not fall within the parameters of Rule 16, and has allowed the defendants to copy all documents requested from those files.

Upon request, the United States has produced well over a hundred thousand pages of documents whether or not those documents are directly relevant to this case. Upon request, the United States has provided the defendants access to investigative materials from other tangentially related cases and has allowed the defendants to copy all documents requested form those files. The United States has already begun providing early Jenck's Act material for approximately 41 individuals and has provided those statements and that testimony regardless of whether those witnesses will actually testify at trial. Most recently, the United States and the defendants have worked cooperatively to access and search several computers that were in the possession of the Rhode Island State Police for potentially (but not clearly) relevant data – further producing thousands, if not hundreds of thousands of additional documents.

During the course of discovery, counsel for the defendants and counsel for the United States have cooperatively exchanged correspondence and discussed outstanding discovery issues. During the course of correspondence and discussions, the United States has advised the defendants that it believes it has fully complied with its discovery obligations and it recognizes its continuing obligation to produce exculpatory evidence. Nonetheless, defendants have identified certain categories of documents that they claim must be produced.

The United States has not refused any request for discovery, whether or not legally required to comply, except to the defendants' request to produce *all* the agent notes of interviews of John Celona (the United States produced some notes). The United States has also refused the defendants' request to characterize statements, produced in discovery and made by John Celona,

as truthful or untruthful. Both requests were denied for reasons of principle and precedent. The United States just should not, as a matter of course, produce agent notes and even if the United States could divine the truth with absolute certainty to characterize witness statements as truthful or untruthful and were required to do so, it would be unwise to make the attempt. That is, after all, the purpose of a trial by jury. Those are the two issues now before the Court.

## III. Argument

### A. The Government's Discovery Obligations

The United States is well aware of its Brady obligations and has provided discovery in this matter in compliance with its obligations under Brady and Giglio, and in accordance with this Court's pre-trial order. However, neither Brady nor Giglio requires the government to respond to the remaining two discovery requests that defendants seek to compel.

The First Circuit has read Brady and Giles v. Maryland, 386 U.S. 66 (1967) to "require fair use of evidence by the prosecutor, accompanied by a duty to disclose evidence materially favorable to the defendant." United Sates v. DeLeo, 422 F.2nd 487, 498 (1st Cir. 1970). However, the First Circuit has "not read those cases to authorize extensive pre-trial discovery by the defendant." Id. (emphasis in original); see also United States v. Woodward, 154 F.Supp. 83, 88 (D. Maine 2001) (Brady establishes no general right of discovery and creates no pretrial remedies). Brady does not require that the Government provide everything that may be interesting or useful to defense counsel, nor does it mandate disclosure of all the facts that might be viewed as favorable to a defendant without regard for its significance. United States v. Bagley, 473 U.S. 667, 675 n.7 (1985) ("a rule that the prosecutor commits error by any failure to

disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor"). Furthermore, Brady in no way mandates the recording and/or disclosure of verbatim accounts of everything that a government witness ever said. United States v. Urciuoli, 470 F.Supp.2d 109, 113 (D. RI 2007).

In Woodward, the defendants requested a wide variety of additional discovery under Brady and Rule 16. The Government responded that it had provided defendants with all materials that it was required to produce, that it was not then aware of any Brady materials in its possession, and that if it became aware of any Brady material, it would turn it over. The district court was "satisfied that the Government understands its duty to disclose any exculpatory evidence useful to defendants and timed to avoid any delay at trial," and denied defendants' discovery motions. Id.; See also United States v. Perez, 940 F.Supp. 540, 552 (S.D.N.Y. 1996) (courts in the Second Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the government has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady). In this case, the United States understands its duty under Brady and has produced discovery in accordance with that duty.

**B. Agents' Notes**

John Celona was interviewed by federal and state law enforcement officers on nine separate occasions, between September 1, 2004, and November 17, 2004. Based on the notes they took during the interviews, the agents created a 45-page composite report, or FD-302 ("composite 302"). This report and many others have long been produced in discovery. The underlying notes have been preserved. Now, defendants seek the production of all the

handwritten notes that form the basis for the composite 302, claiming three reasons for their request: (1) the notes contain exculpatory information that was not included in the composite 302; (2) the notes contain impeachment information not included in the composite 302; and (3) the notes are the "most reliable evidence" of the agents' recollections of the interviews. (Motion to Compel at 10-18)

As defendants point out, the handwritten notes from the Celona interviews were the subject of previous litigation in the Roger Williams Medical Center trial ("RWMC trial"). While not condemning the practice of issuing a composite report of numerous interviews rather than a single report of each interview, the Court recognized that there is at least the possibility that only the last version of what the witness said was published in the composite report. In that case, the Court issued two separate written Orders that the United States review the notes and produce any Brady or Giglio contained in the notes. In denying defendants' motions in that case, on July 24, 2006, the court ordered:

> Attorneys for the Government shall review the notes of the agents who interviewed Mr. Celona, and shall interview those agents, in order to determine whether Mr. Celona made any statements to agents that may constitute Brady material and that are not reflected in the redacted 302's previously provided.

Then again on August 31, 2006 the Court ordered the government to immediately provide, "unredacted copies of all 302's generated from interviews with John Celona regarding this case ***and the 'CVS/Blue Cross' investigation."*** (Emphasis added) The Court again further ordered:

> Counsel for the government shall review all notes taken by agents during all interviews of John Celona and shall provide to defense counsel any Brady/Giglio material contained in those notes not later than 12:00 noon on Tuesday September 5, 2006.

The government twice reviewed the notes in accordance with the court's two Orders and produced supplemental discovery in that case. (Copies of the Orders are attached as Exhibits 1 and 2.)

The United States has produced those same notes to the defendants in this case. As a result of those two previous reviews, the defendants in this case are currently in possession of those handwritten agent notes constituting Brady or Giglio material. The United States also gave the defendants all the notes taken by William Dimitri, Celona's attorney, during the same nine interviews. (Motion to Compel at 10) From this information that they already possess, defendants have identified multiple instances where they claim the notes, in comparison to the composite 302, contain exculpatory and impeachment information.

As an initial matter, neither Brady nor Giglio compel the United States to disclose information already known to the defense. See United States v. Bender, 304 F.3d 161, 164 (1st Cir. 2002) (no Brady violation because defendant was on notice of witness's mental disability prior to his testimony); United States v. Hicks, 848 F.2d 1, 4 (1st Cir. 1988) ("[G]overnment has no Brady burden when facts are readily available to a diligent defender.") (internal citations omitted). Thus, the information defendants have gleaned from the notes which they already have and which they claim is exculpatory or impeachment is exactly that, information they already have, whether exculpatory, impeachment, or not. They use their examples from these notes as a springboard for the speculative proposition that there must be other notes, not produced, that contain exculpatory and/or impeachment information.

As for defendants' general proposition that all of the notes are discoverable, there is no authority for this request, and defendants have cited none. There are sound, common sense

reasons for not producing notes as a routine practice. Notes are, by their very nature, cryptic and designed to convey meaning only to the author. Notes are designed to have only brief utility as a memory aid until a final report can be prepared. Generally, the agent's final report is, by conscious effort, designed to reflect the agent's best recollection of what was said during an interview.

Agent notes are not a statement that can be used to confront the actual witness who made the statements. Therefore, agent notes can only be used unfairly to attempt to suggest that a cryptic notation has a meaning that it was never intended to convey and to get that unintended meaning before the jury – thus unfairly confusing, rather than clarifying, the issues. That the agents' notes may be the "most reliable evidence" of what Celona said during the interviews is speculative at best. To the extent defendants cite to the ubiquitous "best evidence" rule, Federal Rule of Evidence 1004 has no application here. Motion to Compel at 7, 16.

What is settled is that defendants are not entitled to wholesale production of agents' handwritten notes unless the notes meet the requirements of Brady, Giglio, the Jencks Act or any other discovery authority. The Government has already turned over those notes previously determined to be discoverable under Brady and Giglio. Because Celona did not review and adopt the notes, they cannot constitute statements under the Jencks Act. United States v. Marrero-Ortiz, 160 F.3d 768, 776 (1st Cir. 1998).

The cases upon which defendants rely stand for the unquestioned proposition that exculpatory and impeachment material must be produced. These cases do not, however, require the production of notes simply because counsel contends that they *may* be exculpatory or *may* contain impeachment material. Thus, because the United States has already reviewed the notes

in question and produced those notes responsive to defendants' Brady/Giglio request, defendants' motion to compel production of all of the handwritten agent notes underlying the composite 302 should be denied. Alternatively, the next logical remedy is *in camera* review, not wholesale production.

**C. Celona's Statements to the United States**

Defendants also ask that this Court order the United States to identify each instance where Celona lied in his government interviews. (Motion to Compel at 18) To support their position, defendants have cited examples where they claim both Celona and the United States have taken inconsistent positions on how many times Celona has lied. (Motion to Compel at 20-22) They draw their examples from a myriad of sources, including the composite 302, the Government's letter to the Rhode Island Ethics Commission, transcripts from the RWMC trial, filed pleadings, and emails from Government counsel. The "conflicting, vague and incomplete accounts" of when Celona really lied, defendants argue, is a failure by the United States to fulfill its Brady and Giglio obligations. (Motion to Compel at 18)

Not surprisingly, defendants want to be able to identify when Celona lied so that he can be impeached. They want the United States to identify these lies for them. A distinction must be made, however, between lies and inconsistencies. To the extent Celona has lied to the United States, the Government is aware of the lie, and defendants were previously unaware that Celona had lied, this information has been disclosed. However, to the extent that Celona has made statements, already disclosed to the defense, that are *arguably* inconsistent, and thus are *arguably* lies, these characterizations are outside the scope of permissible discovery and the request should be denied.

The United States recognizes, under Giglio and its progeny, that impeachment information must be disclosed. It is unquestionable that a witness's veracity is grounds for impeachment material. However, contrary to defendants' assertions, Brady and Giglio do not require the United States to characterize the facts of a case during discovery in the manner proposed. They do not mandate that the United States identify which facts *might* be harmful or useful to a defense theory. What these cases, and the cases that defendants cite, do is simply create an obligation to turn over the facts that are materially exculpatory or impeaching.

The United States has done just that. Defendants now possess all of Celona's statements: the composite 302 of Celona's first nine interviews, some agent notes of those interviews, all of his attorney's notes from those interviews, separate Form 302 reports of Celona's subsequent statements, other reports of Celona's statements including to the Rhode Island Ethics Commission, State Police, and the media, as well as Celona's grand jury testimony, and transcripts of Celona's testimony during the RWMC trial.

Furthermore, in order to assist the defendants in this specific request, although not required to do so, the United States also provided them with a copy of Celona's Substantial Assistance Motion that contained a section in which the Government attempted to generally assess his overall credibility in summary fashion, including these statements:

> Throughout his debriefings Celona provided largely truthful statements to investigators. Nevertheless, as he began to cooperate, he sometimes recalled events in such a way as to make it look better for himself. For example, Celona candidly admitted that he had changed his position on Pharmacy Freedom of Choice Legislation one month after accepting employment with CVS, a corporation that had a significant financial interest in that legislation. However, he initially tried to explain that he had changed his position, at least in part, because the proposed legislation had been amended to admit independent pharmacies. After investigators pointed out to him that the proposed legislation had been amended, but only long after he changed his position, Celona admitted that he had lied to

> the FBI and that he changed his vote because he was being paid by a corporation that had a financial interest in that legislation.

The assessment concluded:

> In evaluating the truthfulness, completeness and reliability of the information and testimony provided by Celona, the government is cognizant of the fact that the offenses to which Celona plead guilty involve dishonesty. Indeed, Celona has admitted that he lied to his colleagues, his constituents, the Ethics Commission, the public and even to his accomplices. Celona lied to conceal his financial relationships with RWMC, CVS and a health insurance company to conceal his conflicts of interest from the public and to aggrandize the value of his dishonest services to his accomplices. Celona continued in that pattern of dishonesty when he was initially contacted by the FBI. Once Celona began truthfully cooperating, the United States believes that he did so to the best of his ability. Although a great deal of Celona's cross-examination involved demonstrating his dishonesty, it is important to recognize that, in context, much of that demonstrated dishonesty was endemic to the crime and not to his cooperation.

The defendants know what Celona said. They know when he said it. They know how many different ways things were said. They know in what context and to whom the statements were made. They know how he defended his statements under cross-examination in a previous trial. They know what the government told the Court about its view of his credibility. The defendants have the ability to identify the instances where one statement appears inconsistent with another. Nothing prevents the defendants from identifying which statements they would argue are, in fact, lies.

The Government's production of discovery in this case is buttressed by the holdings of the cases cited by the defense. In Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003), the prosecution withheld the content of witness affidavits that contained statements that could have been used to impeach the only witness to the alleged assault. In United States v. Rodriguez, 496 F.3d 221, 226 (2nd Cir. 2007), the government witness on direct examination admitted to lying

about "everything" during her initial ten meetings with the government; no notes had been made of the false statements, and the government had refused to inform the defense of the substance of the lies. Both courts noted the importance of the Government's obligation to produce material exculpatory and impeaching information. Here, that obligation has been fulfilled. The United States has not withheld statements that impeach Celona, nor has it refused to inform the defense of the substance of any lies Celona has admitted to making. Rather, defendants have all of Celona's statements, and they have been told when Celona admitted to lying to the Government.

To require the Government to identify which statements it thinks are arguably false and which are arguably true is nothing more than an exercise in argument. And argument, as the Court well knows, runs easily in both directions. This motion not only ventures into the realm of government work product but raises some practical obstacles as well. What one party may call an inconsistency, another party might characterize differently. The circumstances surrounding the statement may help to persuade a jury that it was true or that it was knowingly false at the time it was made. Celona may testify at trial, and an examination of that future testimony may raise inconsistencies or consistencies previously unimagined. Whether a statement should be qualified as a falsehood or a truth in comparison to other statements is a matter for argument, not a discovery obligation.

The issue here is not whether the Government has withheld impeachment information that shows Celona to be a liar. Complying with its Giglio obligations, the United States has disclosed to defendants those instances it is aware of where Celona said he has knowingly lied. Defendants possess all of Celona's statements, and nothing precludes them from examining those statements to find any inconsistencies they can choose to confront Celona with on the

witness stand. The motion should be denied.

## IV. <u>Conclusion</u>

Based upon the foregoing, the United States respectfully requests that the Court deny Defendants' motion to compel.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN

_______________________________
GERARD B. SULLIVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
Gerard.Sullivan@usdoj.gov

WILLIAM M. WELCH, II
Chief, Public Integrity Section

/s/ ANNALOU TIROL

_______________________________
ANNALOU TIROL
Trial Attorney
Criminal Division
1400 New York Avenue N.W.
Washington, D.C. 20530
AnnaLou.Tirol2@usdoj.gov

**CERTIFICATE OF SERVICE**

______I hereby certify that on the 11th day of December, 2007, I caused the within Government's Memorandum in Support of its Objection to Defendant's Motion to Compel Disclosure of Exculpatory and Impeachment Information to be filed electronically and is available for viewing and downloading from the ECF system.

Notification by first class mail, postage prepaid:

David B. Fein, Esq.
Wiggin and Dana LLP
400 Atlantic Street
Stamford, CT 06911

Mark L. Smith
Law Offices of Mark L. Smith
176 Eddie Dowling Highway, Suite 101
North Smithfield, RI 02896

Thomas R. Kiley, Esq.
Cosgrove, Eisenberg and Kiley
One International Place, Suite 1820
Boston, MA 02110

Peter DiBiase, Esq.
91 Friendship Street, 3rd Floor
Providence, RI 02903

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - Phone
(401)709-5001 - Fax
Gerard.Sullivan@usdoj.gov