**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 07-09-01 (MML) |
| | : | |
| | : | |
| JOHN R. KRAMER, and | : | |
| CARLOS ORTIZ | : | |

**GOVERNMENT'S OBJECTION TO DEFENDANTS' MOTION TO STRIKE THE CONFLICT-OF-INTEREST PROSECUTION THEORY**

The United States of America, by and through its undersigned counsel, hereby objects to Defendants' Motion to Strike the Conflict-of-Interest Prosecution Theory. The grounds for the government's objection are set forth in the accompanying memorandum of law.

Respectfully submitted,

United States of America
By its Attorney,

ROBERT CLARK CORRENTE
United States Attorney

/s/ STEPHEN G. DAMBRUCH

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - Phone
(401)709-5001 - Fax
Stephen.Dambruch@usdoj.gov

WILLIAM M. WELCH, II
Chief, Public Integrity Section

/s/ Daniel A. Petalas
DANIEL A. PETALAS
Trial Attorney
Criminal Division
1400 New York Avenue N.W.
Washington, D.C. 20530
(202) 514-1412 - phone
(202) 514-3003 - fax
dan.petalas@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of April, 2008, I caused the within Government's Objection to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

David B. Fein, Esq.
Wiggin and Dana LLP
400 Atlantic Street
Stamford, CT 06911

Mark L. Smith
Law Offices of Mark L. Smith
176 Eddie Dowling Highway, Suite 101
North Smithfield, RI 02896

Thomas R. Kiley, Esq.
Cosgrove, Eisenberg and Kiley
One International Place, Suite 1820
Boston, MA 02110

Peter DiBiase, Esq.
91 Friendship Street, 3rd Floor
Providence, RI 02903

/s/ STEPHEN G. DAMBRUCH

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - Phone
(401)709-5001 - Fax
Stephen.Dambruch@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 07-09-01 MML** |
| | : | |
| **JOHN R. KRAMER and** | : | |
| **CARLOS ORTIZ.** | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO STRIKE THE CONFLICT-OF-INTEREST PROSECUTION THEORY**

The defendants move, citing no provision of the Federal Rules of Criminal Procedure authorizing such pretrial relief, to preclude the government from pursuing a theory of prosecution that is well pleaded in the Superseding Indictment and recognized in the First Circuit. The defendants' motion is premature, as it is directed at the factual sufficiency of the evidence of the defendants' intent and premised on factual allegations external to the indictment. It should be summarily rejected as non-justiciable. Even were the Court to address the defendants' substantive position, however, the motion should be denied, for it misconstrues the controlling law and the import of the potentially admissible trial evidence.

**I. The Defendants' Motion to Strike a Prosecution Theory Is in Fact a Non-Justiciable Pretrial Challenge to the Sufficiency of the Evidence of Intent.**

The defendants style their motion a motion to strike. The relief they seek far exceeds that stated purpose. The motion asks the Court to preclude the government from pursuing a well-recognized theory of criminal liability in public honest services fraud cases: namely, that the defendants concealed, conspired to conceal, or assisted in concealing a public official's material conflict of interest, thereby demonstrating criminal intent. Motion to Strike at 1; see, e.g., United States v. Sawyer, 85 F.3d 713, 724 (1st Cir. 1996) ("Sawyer I") ("[U]ndisclosed, biased

decision making for personal gain, whether or not tangible loss is shown, constitutes a deprivation of honest services."); id. at 732-33 (when a private citizen is charged with honest services fraud, the requisite intent to deceive may be shown through "evidence only that [the defendant] intended to cause the legislators intentionally to fail to disclose material information about the violations"). Such relief does not fall within the purview of a motion to strike or any other procedural rule concerning pretrial motions practice.

Rule 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The Rule is inapposite because the defendants do not simply argue that language mentioning conflicts of interest in the Superseding Indictment must be stricken as surplus. To the contrary, the defendants seek preclusion from the case of an entire "theory" of prosecution. Styling a motion as one to strike, if not covered by the Rule, does not make it so. United States v. Fiorelli, 337 F.3d 282, 287-88 (3d Cir. 2003) (recognizing that "the function of the motion, and not the caption, dictates which Rule is applicable"). Regardless, a surplusage claim would be unavailing at any rate because, to charge a concealed conflict – which is a viable theory in the First Circuit – it is appropriate to plead the minor premise, the conflict. See, e.g., United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (holding a motion to strike surplusage from an indictment should not be granted "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial . . . . [T]his is a most exacting standard.").[1] Further, the only paragraphs specifically challenged in the two pages of the motion that address the actual language of the indictment -- paragraphs 23, 25, 31, 97, and 103 -- each carefully describe the conflict of interest as a

[1] The court may reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language. United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990), overruled on other grounds United States v. McQueen, 86 F.3d 180 (11th Cir. 1996).

concealed or non-disclosed conflict. See Motion to Strike at 8-9. Accordingly, under this exacting standard, there is no danger of prejudice to the defendants, and no basis to strike.

Further, even reading the pleading generously, the defendants cannot rely on Rule 12 concerning pretrial motions to dismiss.[2] Among those motions that may or must be filed pretrial are "any defense, objection, or request that the court can determine without a trial of the general issue" and motions "alleging a defect in the indictment or information." Fed. R. Crim. P. 12(b)(2), (3)(B) (emphasis added). The instant motion does not fit either provision. First, to dispose of the question raised here would require a mini-trial on the general issue of the sufficiency of the evidence of the defendants's intent. Cf. McCormick v. United States, 500 U.S. 257, 270, 111 S.Ct. 1807 (1991) ("It goes without saying that matters of intent are for the jury to consider."). Indeed, that is exactly what the motion strives to do by relying on a lengthy set of facts attached to it, all of which fall well outside the allegations pleaded in the indictment. Second, a facially valid indictment may not be subject to pretrial attack based on a claim of insufficient evidence. See, e.g., United States v. Calandra, 414 U.S. 338, 344-45, 94 S. Ct. 613 (1974) (holding that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"); United States v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989) (holding that a court should not inquire into sufficiency of the evidence supporting an indictment before trial).

In sum, the question raised in the motion is a question of fact, not of law. The Court should treat the motion for what it is: a pretrial challenge to the sufficiency of the evidence of the defendants' criminal intent. Such a motion is inappropriate at this stage of the proceedings. The

---

[2] As an initial matter, treating the motion as one to dismiss would be improper because the defendants do not seek to dismiss the Superseding Indictment or any of its counts, but instead seek to bar a cognizable theory for proving intent in support of a charge in the indictment.

defendants will be afforded an opportunity to make their arguments about intent, both pursuant to Rule 29 with its attendant safeguards and again to the jury after presentation at trial of all the admissible and relevant evidence. The motion is premature and should be denied as a threshold matter.

## II. Even Were the Motion Cognizable, It Would Lack Merit.

Assuming that the Court were to treat the substance of the motion, it fails to overcome the settled law in this circuit that a private citizen may be convicted for theft of honest services if he intends to cause a public official to conceal a conflict of interest. Neither the defendants' reliance on the Urciuoli decision's note of caution about unconcealed conflicts, nor their untested inferences drawn from a portion of the pretrial evidence warrant the extraordinary relief they seek.

### A. The Defendants Misapprehend the State of the Controlling Law.

The defendants' motion paints an ominous portrait of honest services fraud in the First Circuit. That picture is inconsistent with the settled law, however. The law of this circuit supports both the bribery and concealment theories of liability pleaded in the indictment. The defendants' claim that, as a legal matter, concealment is somehow no longer a viable theory after Urciuoli in public honest services cases against private citizens is not derived from any such statement in the opinion, and disregards the line of cases that precede it. Indeed, all of the following principles are authoritative in the First Circuit and support the theory charged in the indictment.

First, this circuit and others have repeatedly recognized that a defendant may commit honest services fraud not only through bribery of a public official, but also by intending to conceal an official's conflict of interest. E.g., Sawyer I, 85 F.3d at 724; United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998); United States v. Sawyer, 239 F.3d 31, 40 (1st Cir.

2001) ("Sawyer II"); United States v. Paquette, 201 F.3d 40, 42 (1st Cir. 2000); United States v. Urciuoli, 513 F.3d 290, 295 n.3 (1st Cir. 2008). The two theories are not inconsistent, and nothing bars prosecuting both together. See, e.g., Paquette, 201 F.3d at 42. The gravamen of the offense is the intent of the defendant to defraud, which must be proven under either scenario. Sawyer I, 85 F.3d at 732-33. This circuit has on several occasions affirmed public honest services convictions of private citizens, and has never made mention of any distinction between public and private citizens in authorizing prosecution under either theory. E.g., Sawyer II, 239 F.3d at 40; Paquette, 201 F.3d at 42; United States v. Potter, 463 F.3d 9 (1st Cir. 2006).[3]

Second, the First Circuit has twice stated that the government need not prove a violation of state laws, whether criminal or otherwise, to convict a defendant for theft of honest services. Sawyer II, 239 F.3d at 42-44; Sawyer I, 85 F.3d at 726-29.[4]

Third, the First Circuit has also recognized that the fiduciary duty owed by public officials to the public to disclose fully their conflicts when acting on official matters does not flow from state ethics rules or opinions, as other circuits have noted. See United States v.

---

[3] Defendants claim they have yet to discover "a single case affirming the trial conviction of a private citizen for honest-services fraud under a conflict-of-interest theory, let alone under simultaneous improper-influence and conflict-of-interest theories of prosecution." Motion to Strike at 6. This is a meaningless fact, of course, especially so given the holdings in Sawyer I and II, dealing with a lobbyist defendant, that recognized the dual bribery and concealment theories without mentioning any preclusionary rule for application to private citizen defendants. See Sawyer I, 85 F.3d at 724; Sawyer II, 239 F.3d at 46. Nonetheless, Paquette, a First Circuit case, would appear to meet the defendants' specifications. See 201 F.3d at 42 (on appeal from trial conviction of private citizen for honest services fraud, affirming jury instruction that "correctly gave bribery and failure to disclose a possible conflict of interest as possible examples of . . . a deprivation" of honest services).

[4] That other circuits may take a different approach is obviously not controlling in the First Circuit. Nonetheless, it is worth noting that the Third Circuit has not gone so far as the defendants suggest. See Motion to Strike at 5. That court has not held that an honest-services theory based on concealment of a conflict of interest requires a showing that state law was violated. Murphy, 323 F.3d at 117; Panarella, 277 F.3d at 699 n.9.

Jennings, 587 F.3d 564, 578 (8th Cir. 2007); United States v. Martin, 195 F.3d 961, 966 (7th Cir. 1999). Rather, the court has stated in no uncertain terms that “[t]he obligation to disclose material information inheres in the legislator’s general fiduciary duty to the public.” Sawyer I, 85 F.3d at 733 n.17 (emphasis added); accord Sawyer II, 239 F.3d at 40. The First Circuit repeated the point in Woodward, reasoning that this duty existed “separate and apart” from a state statute that required disclosure of certain financial interests. Woodward, 149 F.3d at 62. Defendants fail to address this aspect of Woodward and Sawyer I.[5] Thus, to the extent the defendants posit that the legislator’s duties to disclose conflicts derive from state law, or that state ethics advisory opinions and the statutory “class exception” function as a form of legal defense to criminal liability, see Motion to Strike at 12-17, these precedents undermine that claim. See Urciuoli, 513 F.3d at 298-99.

Fourth, and perhaps most importantly, the decision in Urciuoli changed none of this. The Urciuoli defendants conceded the sufficiency of the evidence in that case, but challenged several jury instructions. Urciuoli, 513 F.3d at 293. The court first addressed whether Celona’s lobbying of municipal officials to increase ambulance runs to his benefactor was tied closely enough to his official position to invoke the fiduciary duty to the public on which the statute is premised. Id. at 294-95. The court held it was not, but that his other conduct satisfied the necessary connection to his public office. Id. at 297. The court also addressed the defendants’ contention that Rhode Island law, which included the statutory “class exception” so strongly emphasized in the defendants’ motion, see Motion to Strike at 15-17, provided them with affirmative defenses. Id. at 298. The district court denied such an instruction and instead

[5] These cases are not alone in holding that such a general duty exists. See United States v. Martin, 195 F.3d 961, 966 (7th Cir. 1999); United States v. Bryan, 58 F.3d 933, 940-41 & n.1 (4th Cir. 1995); United States v. Margiotta, 688 F.2d 108, 123-24 (2d Cir. 1982); United States v. States, 488 F.2d 761, 767 (8th Cir. 1973).

instructed the jury that state law was irrelevant except as it might bear on intent. Id. Urciuoli then specified that an affirmative defense instruction would be pertinent only if "the government . . . had chosen to proceed on the theory that a conflict of interest alone (as opposed to a bribe or concealment of a conflict) was a basis for conviction." Id. at 298-99 (emphasis added). The defendants struggle to recast the court's holding as addressing solely the source of Celona's fiduciary duty. Motion to Dismiss at 10. That reading overlooks the very reason the source of duty question was relevant, which is that the Urciuoli defendants were challenging the failure of the district court to provide their requested affirmative defense instruction. Id. Thus, the court's statement can be read in one way only: in a concealed conflicts case, as here, (and as opposed to a mere "conflict of interest alone") such evidence is not a pertinent affirmative defense, and the jury should be instructed that evidence about ethics opinions or the class exception may be considered, if at all, only to the extent it bears on intent. Id.[6]

In sum, the indictment here, including its allegations concerning Celona's concealed conflict of interest, falls squarely within the scope of the honest services fraud statute as construed in the First Circuit. Urciuoli did not effect a sea change in that settled law, nor did it indicate any concern about jury confusion based on the concealed conflict theory. To the contrary, as shown above, the decision provides additional support for the government's

---

[6] Defendants also overlook other recent extra-circuit decisions that undermine the thrust of their position that state law can serve as a defense to liability in a concealed conflicts case. See United States v. Walker, 490 F.3d 1282, 1299 (11th Cir. 2007) (reiterating circuit's rule that "an honest services mail fraud . . . conviction does not require proof of a state law violation," in case where "the jury instructions specifically cautioned jurors not to decide whether [defendant] violated any state law, but to consider those laws only to the extent that the evidence indicated an intent to commit fraud on [defendant's] part" (emphasis in original)); Jennings, 487 F.3d at 580 (rejecting claim that "the jury should have been instructed that if the government failed to prove [defendant] violated the disclosure standards in the statute, then he acted in good faith and lacked the requisite fraudulent intent," and holding that "[t]he court's instruction correctly stated that the compliance or non-compliance with these rules is only evidence relating to [defendant's] intent to defraud").

charging approach to these defendants, and by its plain language undermines the defense effort to shield themselves from federal prosecution by reference to state ethics code and opinions. To the extent the court has any concern about the indictment's method of charging a concealed conflict, the proper "precaution" under Urciuoli remains the traditional one: an appropriate limiting instruction to the jury.

## III. The Defendants' Factual Claims Are Selective, Untested, and Warrant No Relief.

The conclusory nature of the assertions the defendants posit about the likely trial evidence serve to demonstrate that the motion is premature and not well taken. The defendants present a selection of some of the possible trial evidence without regard to admissibility, limiting instructions on use, or other evidence that may undermine, qualify, or contextualize it. Not only is the factual record incomplete, the inferences the defendants attempt to draw from it are simply self-serving. The government contends that it is inappropriate to conduct a mini-trial on disputed and nuanced questions of fact through pretrial motions practice. Nonetheless, even a cursory review of a few of the defendants' factual assertions reveals that there is no reason to preclude the concealed conflicts theory at this time.

For example, defendants argue that Celona had no disqualifying conflict by virtue of the so-called statutory "class exception." Even assuming that the scope of Section 1346 were somehow limited by state law, however, that assertion is not supported by the actual language of the Rhode Island Code of Ethics and/or the application of the requirements of that code to the facts underlying the instant case.

While R.I. Gen. Laws § 36-14-7(b) does address the issue whether a state senator has a substantial conflict when he takes official action that impacts his employer or business associate in certain limited circumstances (e.g., where the senator's employer or business associate will neither accrue any benefit or detriment as a result of the official action to any greater extent than

any other member of a group of similarly situated entities), it does not relieve the state senator of his duty to comply with other sections of the ethics code. Those other statutorily mandated responsibilities include the requirement that he disclose the existence of the employment relationship and/or business association by submitting a sworn written statement to the Ethics Commission and the presiding officer of the State Senate (see R.I. Gen. Laws § 36-14-6), as well as filing an annual financial statement listing all sources of income exceeding $200.[7]

Here, the evidence will show that Celona never submitted the required sworn statement nor disclosed the income received from CVS on his annual financial statements during the relevant time frame.

Likewise, although the government does not dispute the fact that Celona claims he made a telephone call to an unidentified person at the Rhode Island Ethics Commission and subsequently discussed that fact with the defendants, there is some disagreement as to the timing of that call, the motivation behind it, the facts disclosed, and the precise language used by Celona when describing for the defendants the "advice" he received in response to his telephonic query. There is no doubt, however, that Celona never sought a written advisory opinion from the Ethics Commission and that the defendants made no attempt to confirm the Ethics Commission's position on this matter. Furthermore, the defendants subsequent failure to disclose the existence of the consulting relationship to their contract lobbyists and/or other key employees and executives of CVS, as well as defendant Ortiz's involvement in the drafting of a post hoc "scope of work" document approximately one year after the relationship commenced, belies the

[7] Even the controversial Irons advisory opinion referenced by defendants (No. 99-63), the validity of which is currently being challenged in a pending Ethics Commission prosecution based upon allegations that Irons failed to fully and accurately disclose all of the material facts relied upon by the Commission when they issued that opinion, required Irons to file a notice pursuant to R.I. Gen. Laws § 36-14-6 before he could take any official action.

defendants' claim that they had a good faith belief that the Celona situation passed ethical muster.

Thus, the evidence at trial will likely show that Celona and the defendants did not disclose the true nature of the conflict to the Ethics Commission, or comply with any of the relevant regulations for obtaining an advisory opinion or triggering the "class exception." For this reason, the advice Celona may have received and the existence of a statutory class exception will not serve the defendants as a positive defense to criminal liability, even assuming the scope of Section 1346 were somehow limited by state law -- a proposition the First Circuit has rejected. And, given the full picture of the relevant evidence on these points that should come out at trial, there is also sound reason to believe they will add no particular force to the defendants' sufficiency arguments about criminal intent under Rule 29 or before the jury.

Finally, the defendants throughout their motion assert that the concealed conflicts theory will sow confusion because the government's charging decision flouted various general cautionary remarks about the potentially broad scope of ill-considered honest services charges. As shown above, this is not such a case. At the same time, however, the defendants fail to note that the indictment here very carefully steers clear of making any suggestion that violation of state laws regarding conflicts of interest or ethics prove criminal conduct. Rather, the indictment alleged that the defendants concealed a conflict of interest from the public (not merely that Celona acted under such a conflict). The indictment did not state or imply that defendants violated a state ethics code. It did not quote or paraphrase the provisions of R.I. Gen. Laws §§ 36-14-5, 36-14-6, or 36-14-7. Nor did it claim Celona's conduct fell outside the "class exception" to which defendants devote much discussion. State law was not mentioned, nor was the Ethics Commission. Instead, the indictment was based on a correct statement of the general fiduciary duty Celona owed the public, as recognized in Sawyer I and Woodward. The

defendants' argument of jury confusion supposes that the jury would take out of context the few mentions of concealed or non-disclosed "conflicts" in the indictment.[8] State law is not a pivotal element of the charge here, and there is nothing in the indictment that obligates the Court to preclude the concealed conflict theory to protect against jury confusion.

---

[8] The defendants' steady refrain – that the main thrust of the prosecution is alleged bribery, and concealment a mere afterword – even supposing arguendo that were true, has no bearing on whether the government may pursue an alternative theory of liability that is also legally cognizable and well pleaded. Alternative theories of liability are commonplace, and will not seed juror confusion that is not readily curable by instruction, if the court deems an instruction necessary.

## CONCLUSION

For all the foregoing reasons, the defendants' pretrial motion seeking to exclude the concealed conflicts theory of prosecution from the trial of this case should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Stephen G. Dambruch
STEPHEN G. DAMBRUCH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
Stephen.dambruch@usdoj.gov.

WILLIAM M. WELCH, II
Chief, Public Integrity Section

/s/ Daniel A. Petalas
DANIEL A. PETALAS
Trial Attorney
Criminal Division
1400 New York Avenue N.W., 12th Floor
Washington, D.C. 20530
(202) 514-1412 - phone
(202) 514-3003 - fax
dan.petalas@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2007, I caused the within Government's Memorandum to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

David B. Fein, Esq.
Wiggin and Dana LLP
400 Atlantic Street
Stamford, CT 06911

Mark L. Smith
Law Offices of Mark L. Smith
176 Eddie Dowling Highway, Suite 101
North Smithfield, RI 02896

Thomas R. Kiley, Esq.
Cosgrove, Eisenberg and Kiley
One International Place, Suite 1820
Boston, MA 02110

Peter DiBiase, Esq.
91 Friendship Street, 3rd Floor
Providence, RI 02903

/s/ Stephen G. Dambruch

STEPHEN G. DAMBRUCH
Assistant U. S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Stephen.dambruch@usdoj.gov