**Anthony M. Traini**
Attorney at Law
56 Pine Street
Providence, RI 02903
401.621.4700

**BY HAND**

May 7, 2008

The Honorable Mary M. Lisi
Chief Judge
United States District Court
District of Rhode Island
One Exchange Terrace
Providence, RI 02903

Re: United States v. John R. Kramer and Carlos Ortiz, 07-09-01 (MML)

Dear Chief Judge Lisi:

We are compelled to respond to the Government's correspondence to the Court dated May 6 suggesting modifications of the proposed redactions to Mr. Ortiz's State grand jury testimony. (See Letter from AUSA S. Dambruch, dated May 6, 2008 ("Dambruch Letter").) We have had the benefit of Mr. Fein's letter to the Court submitted simultaneously with this one, and agree completely with his comments, particularly those regarding the timing of this issue.

Moreover, we are troubled by the Government's attempt to essentially rewrite the transcript, not only at this late date, but in the manner proposed. As the Court knows, the value of any evidence, especially statements, in any case of this nature is controlled by its context. As Your Honor also knows, the purpose of Rule 106 is to protect that environment with one goal—to assist the jury in making the most probative use of that evidence but in a way that is fair to the party against whom it is offered, and to prevent the jury from being misled in its consideration of the evidence.

Mr. Fein has carefully analyzed the government's proposed modifications to his suggested redactions and demonstrated to the Court the fallacy of the government's position in its latest attempt to contort this evidence to its own use. Mr. Ortiz has similar concerns. By agreeing to the redactions as originally proposed, we were reasonably comfortable that the use of the transcript would be fair to both defendants in its avoidance of the Bruton issue that was flagged for the government many months ago. In considering the government's present suggestion, we find that it is not even remotely possible to accept this proposition in fairness to Mr. Ortiz, who is the party against whom the government wishes to offer this evidence. As suggested during argument on the motion, it has proven impossible to be fair to both Mr. Ortiz and Mr. Kramer in excising the proffered transcript.

For example, the government's very first statement in objecting to the redaction at lines 21:1-4 is that this statement is "highly probative as to Mr. Ortiz' state of mind at a significant point in time, that is, during the preliminary discussions that eventually led to the signing of the CVS/Celona consulting agreement." Without question, the transcript deals with Mr. Ortiz' state of mind. The State prosecutors repeatedly ask questions aimed at establishing that state of mind and Mr. Ortiz' intent, which is the central issue in the case. The government then agrees to the next proposed redaction (at lines 28:10-13), which, in part, places Mr. Ortiz' earlier statement in context: [redacted]

Similarly, the government objects to the redaction of lines 45:2–47:13, while simultaneously offering to strike lines 36:11–14 "which consist of the statements of the state prosecutor, not Mr. Ortiz." (Dambruch Letter at 2.) The passage proposed for redaction, with the inclusion of the prosecutor's remarks, sounds like the government's closing argument on the federal-program bribery charge contained in the Superseding Indictment.

A more striking example is the suggestion to modify the redaction of lines 51:12-52:12 by redacting only lines 52:6-12. Ending the relationship with Celona is an important event in the case evidence. Including the statements by Mr. Ortiz expressing [redacted]

While there are other examples of the effect of "redacting the redactions" suffice it to say that this is a problem of the government's own making, and its present suggestions make the problem worse. The government's proposal will effectively rewrite the transcript and provide the jury with what is essentially a fabricated account of what Mr. Ortiz believed at the time, tailored to meet the government's need. It is the equivalent of tampering with evidence. Then, in what can only be described as a stunning display of chutzpah, the government suggests to the court that it is Mr. Ortiz who cannot meet the burden of establishing the application of Rule 106. Moreover, the government has the cheek to suggest that "[t]he proposed redactions in the instant case do not involve statements that are relevant to an issue in the case. . .", after telling the court at a prior hearing that its intent was to introduce the <u>entire</u> transcript, which it must have believed to be relevant, in its <u>entirety</u>.

Also disturbing is the government's effort to bolster its position with an uninvited legal memorandum in which all the cases cited share one trait—every one is inapposite to the issue raised here: <u>Awon</u> (because it is factually and legally distinguishable, particularly in that it dealt with entirely different statements that were being offered to impeach in-court testimony); <u>Price</u> (because it involved two different statements made two years apart); <u>Range</u> (the cite to <u>Bradford</u> is incorrect) (because the matter was not raised pretrial and the court had to take it on the fly and was caught between a mistrial of the co-defendant because of a <u>Bruton</u> issue or letting the defendant have the statement; it appears that defense counsel mistakenly thought he would be more successful by not raising the issue in advance); <u>Jackson</u> (because the balance of the

statement was entirely self-serving hearsay); Bollin (because the co-defendant whose transcript was redacted pled guilty the day before the defendant's trial and testified against him, so she was cross-examined); and Wilkerson (because it involved oral, not written statements, to which Rule 106 does not apply). In addition, the two cases cited for the "following orders" argument do not stand for that proposition. Guerra-Garcia misstates the position because "following orders" was not used as a defense in that case; and Brandon said not that "following orders" was not a valid defense, but that the defense could not stand in the face of overwhelming evidence to the contrary.

As Mr. Fein points out in his letter, commencement of trial is now upon us. The Court knows first hand, as do we, that the most difficult evidence to deal with in this kind of case is that consisting of statements of the defendants themselves. As the Court is aware from the Potter trials, it is in fact the most powerful evidence in this kind of case, and preparation for its use requires time and effort not usually devoted to other important aspects of a trial of this nature. It cannot be overemphasized that the government put all of us—the Court included—in this predicament, and now wants the court to fashion a remedy for its wrong. The only fair remedy is to preclude the use of the transcript in its entirety or to adopt the recommendations of the Fein Letter.

Respectfully submitted,

Anthony M. Traini

cc: AUSA Stephen Dambruch, Esq.
AUSA Daniel Petalas, Esq.
David B. Fein, Esq.
Peter DiBiase, Esq.
Thomas R. Kiley, Esq.
Mark Smith, Esq.