**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **CR. No: 07-09MML** |
| | ) |
| **JOHN R. KRAMER** | ) |
| **CARLOS ORTIZ** | ) |

**UNITED STATES' OBJECTION TO DEFENDANTS' MOTION FOR A DECLARATION OF MISTRIAL WITH PREJUDICE OR FOR OTHER APPROPRIATE RELIEF**

The United States objects to Defendants' Motion for a Declaration of Mistrial with Prejudice or for Other Appropriate Relief. The bases for the United States' objection are stated in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Robert Clark Corrente
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5002 - fax
robert.corrente@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

/s/ Stephen G. Dambruch
STEPHEN G. DAMBRUCH
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
stephen.dambruch@usdoj.gov

WILLIAM M. WELCH, II
Chief, Public Integrity Section

/s/ Daniel A. Petalas
DANIEL A. PETALAS
Trial Attorney
Criminal Division
1400 New York Avenue N.W., 12th Fl.
Washington, D.C. 20530
(202) 514-1412 - phone
(202) 514-3003 - fax
dan.petalas@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2008, I caused the within Government's Objection to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

David B. Fein, Esq.
Wiggin and Dana LLP
400 Atlantic Street
Stamford, CT 06911

Mark L. Smith
Law Offices of Mark L. Smith
176 Eddie Dowling Highway, Suite 101
North Smithfield, RI 02896

Thomas R. Kiley, Esq.
Cosgrove, Eisenberg and Kiley
One International Place, Suite 1820
Boston, MA 02110

Peter DiBiase, Esq.
91 Friendship Street, 3rd Floor
Providence, RI 02903

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **)** |
| | **)** |
| **v.** | **) CR. No: 07-09MML** |
| | **)** |
| **JOHN R. KRAMER** | **)** |
| **CARLOS ORTIZ** | **)** |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION FOR A DECLARATION OF MISTRIAL WITH PREJUDICE OR FOR OTHER APPROPRIATE RELIEF**

Defendants have moved for a mistrial based on the government's alleged knowing presentation of false testimony by John Celona. What is particularly remarkable about defendants' motion, is their "cavalier" disregard for relevant Supreme Court and First Circuit case law which defines what constitutes perjury and the circumstances properly giving rise to an inference that a witness has committed perjury.[1] "**It is axiomatic that inconsistent testimony is not *per se* perjurious**." United States v. Gary, 74 F.3d 304, 314 (1st Cir. 1996). Not surprisingly, an examination of the pertinent case law is fatal to defendants' claims that John Celona's testimony was perjurious or that the prosecutor knowingly presented false testimony in violation of Rule 3.3 of the Rules of Professional Conduct. Accordingly, defendants' motion should be denied.

[1] Despite the Court's specific instruction to defense counsel that First Circuit case law on the issues raised in their motion "would be most helpful," Ex. E, 5/20/08 Trial Tr. at 16:9-13, defendants ignore the First Circuit's repeated pronouncements as to what constitutes perjury, and the circumstances under which an inference it has occurred is appropriate.

## I. ARGUMENT

### A. Federal Definition of Perjury

"A witness testifying under oath or affirmation [commits perjury] if [h]e gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 95 (1993). The definition of perjury has remained consistent for "over a century." Id. Further, "inconsistent testimony is not *per se* perjurious." Gary, 74 F.3d at 314 (emphasis in original). See also United States v. Tavares, 93 F.3d 10, 14 (1st Cir. 1996) ("Inconsistent testimony by itself does not amount to perjury . . . .").

Thus, a defendant who contends that the prosecutor intentionally presented perjured testimony must present evidence demonstrating deliberate prosecutorial misconduct. Gary, 74 F.3d at 314-15. The fact that a defendant's trial testimony differs, for example, from his grand jury testimony "does not warrant the inference that the government knowingly introduced perjurious testimony." United States v. Hemmer, 729 F.2d 10, 17 (1st Cir. 1984); cf. United States v. Lebon, 4 F.3d 1, 2 (1st Cir. 1993) (per curium) ("The fact that a witness contradicts herself or charges her story does not establish perjury.").

The allegations of perjury made in United States v. Gary are similar to those defendants currently maintain. In Gary the defendant was tried twice, his first proceedings ended in a mistrial. 74 F.3d at 307-08. At Gary's second trial, tried before this Court, one of the government's witnesses testified differently than he had at the first trial. Because the witness's testimony between the first and second trial was inconsistent, on appeal, Gary contended that the witness's testimony was perjurious. Id. at 314.

While noting that the witness's testimony at the second trial "differ[ed] in a troubling way from that given at the first trial" and that the witness's proffered explanation for the inconsistency was "weak," the Circuit declined Gary's "invitation to make a finding of willful intent to provide false testimony based solely on inconsistency." Id. at 314.

Defendants contend that Celona's trial testimony on three points, his call to the Rhode Island Ethics Commission, his subsequent discussion of the same with Kramer and Ortiz, and whether he engaged in any work for CVS in 2000, was inconsistent with prior testimony he has provided on these issues. The government addresses these alleged inconsistencies seriatim.

**(1) Celona's Trial Testimony Concerning His Conversation with the Ethics Commission Does Not Suggest He Committed Perjury**

In moving for a mistrial, defendants point to alleged inconsistencies in Celona's trial testimony and his prior grand jury and Urciuoli trial testimony concerning whether he specifically identified CVS in his conversation with the Ethics Commission. The relevance of what Celona said to the Ethics Commission is limited. Whether defendants committed honest services mail fraud depends upon whether they possessed the requisite intent either to influence [Celona] in [his] official action, or, more relevant here, intended that Celona fail to disclose a conflict of interest resulting in personal gain. United States v. Sawyer, 239 F.3d 31, 41 (1st Cir. 2001). Thus, what Celona said to the Ethics Commission is not as materially relevant as what Celona said to Kramer and Ortiz concerning his telephone call.[2]

---

[2] The Court has expressed that its primary concern about the alleged inconsistencies in Celona's testimony relates to his testimony concerning whether he mentioned "CVS" in his call to the Ethics Commission because that portion of his testimony is "powerful" evidence of criminal intent. Ex. F, 5/23/08 Trial Tr. at 112:17- 113:1. The government respectfully disagrees concerning the materiality of that portion of Celona's testimony as it relates to the issues before the jury. At times during the trial, the Court has expressed its own view that Celona's motivation

In any event, Celona's trial testimony concerning his Ethics Commission telephone call does not indicate that his testimony on this point was perjurious. Indeed, for many reasons, prior to this trial, the record concerning what Celona said to the Ethics Commission during his telephone call was murky. For example, defendants point to Celona's May 2, 2006, grand jury appearance during which they contend he testified that he specifically mentioned CVS to the Ethics Commission. This is not the case. Instead, Celona testified as follows:

> After I left the meeting, I -- I left my cell phone in the van, the loaner van, and I called the Ethics Commission to see if it was proper. And I should have gotten a written response -- I should have written a request, but I didn't but hindsight is 20/20. And they said, "Well, if it specifically deals with CVS you can't vote on it, but if it does not specifically deal with CVS, you can vote on it." And I also faxed a copy of that to my attorney at the time prior to my signing it.

Ex. A, 5/2/06 GJ Tr. at 49:15-24. Celona did not testify that he specifically mentioned CVS during his telephone call with the Ethics Commission. Instead, his May 2, 2006, grand jury testimony reveals his understanding of what the Ethics Commission informed him concerning what he could or could not do while working for CVS.

Similarly, on May 16, 2006, during his grand jury appearance, the prosecutor asked Celona:

> Q. Mr. Celona, I just have a couple of questions for you. You have testified in response to questions by Mr. Sullivan that you discussed with Carlos Ortiz and Jack Kramer the fact that you had consulted the Ethics Commission regarding working for CVS as a consultant on elderly affairs, correct?

---

for taking certain actions is "irrelevant" unless it was caused by defendants' actions. Ex. E, 5/20/08 Trial Tr. at 15:22-25. See also Ex. E, 5/20/08 Trial Tr. at 16:21-25 (THE COURT: "What he thought is relevant only insofar as it's a response to some act or omission of the Defendants."). Whether Celona specifically referred to CVS in his call to the Ethics Commission is relevant to his intent. In this case, the question for the jury is whether Kramer and Ortiz possessed the requisite intent to violate the honest services mail fraud statute.

A. Yes, sir.

Ex. B, 5/16/06 GJ Tr. at 84:7-13. Here, Celona's "yes" answer is in response to the prosecutor asking what he discussed with Kramer and Ortiz concerning his call to the Ethics Commission, not what he said to the Ethics Commission. Perhaps more important, the relevance of this grand jury testimony by Celona is undermined by the fact that the prosecutor's question to him inaccurately summarized Celona's prior testimony on that day. In fact, Celona had not testified that he "discussed with Carlos Ortiz and Jack Kramer" the fact that "he had consulted with Ethics Commission regarding working for CVS as a consultant on elderly affairs." Ex. B, 5/16/06 GJ Tr. at 84:7-13. Instead, on May 16, 2006, Celona testified to the following:

Q. Okay. Did you have any communication with anyone from CVS concerning the necessity of an Ethics clearance?
A. Yes, sir.
Q. Who did you speak with?
A. Carlos and Jack.
Q. Both of them?
A. I believe so, yes.
Q. At the same time or separately?
A. I believe at the same time.
Q. How often was that discussed?
A. I think that was just before -- not just before but before they had offered me the contract in writing.
Q. On one occasion?
A. I believe so, yes.
Q. Who brought up the topic of Ethics clearance?
A. I believe it was Carlos.
Q. Do you remember what he asked or what he said?
A. He said, "Can you -- would they allow you to do this?"
Q. Do you recall what your response was?
A. And I said that I had gotten clearance from the Ethics Commission because it had been in the paper to be a senior citizen consultant for the Village at Elmhurst.
Q. And that's what you testified about when you were here for the Roger Williams portion of this investigation; is that correct?
A. Yes, sir.

Q. Besides telling them that you had clearance to work for the Village in that instance, did you tell them anything else?
A. Not to my recollection, no.
Q. Did you tell them that you actually had clearance to work for CVS?
A. Not to my recollection.

Ex. B, 5/16/06 GJ Tr. at 77:2-78:13.

During the Urciouli trial, Celona's testimony concerning his call to the Ethics Commission was equivocal. When first asked about whether he contacted the Ethics Commission concerning the "CVS deal" Celona said "no." Ex. C, 9/18/06 Urciuoli Trial Tr. at 202:1-3. Celona reiterated his position:

Q: And you never contacted Ethics at all concerning the CVS deal, did you?
A: No.
Q: And you never got any kind of oral opinion from Ethics on CVS, did you?
A: I don't believe so.

Ex. C, 9/18/06 Trial Tr. at 202:4-9. Subsequently, defense counsel asked Celona to affirm his grand jury testimony rather than testify anew to the substance of his conversation with the Ethics Commission. For example, after having Celona read his May 2, 2006, grand jury testimony in which Celona stated that the Ethics Commission said "if it specifically deals with CVS you can't vote on it, but if it does not specifically deal with it you can" defense counsel inquired "[i]s that the way you testified before the federal grand jury?" Ex. C, 9/18/06 Urciuoli, Trial Tr. at 206:25-207:12, Celona answered "[y]es," Ex. C, 9/18/06 Urciuoli Trial Tr. at 206:13. Defense counsel asked "[t]hat was a lie, wasn't it?" "No," Celona responded. Ex. C, 9/18/06 Urciuoli Trial Tr. at 207:14-15. Celona and defense counsel continued their exchange:

Q. You said before the grand jury, I called the Ethics Commission to see if it was proper; right?
A. Yes.
Q. What? See if what was proper?

A. To do some consulting work for CVS.
Q. For what?
A. For CVS.
Q. For money? For money; right?
A. Yes.

Ex. C, 9/18/06 Urciuoli Trial Tr. at 212:12-20. In this instance, Celona's testimony is properly read as reaffirming his grand jury testimony that he called the Ethics Commission in order to ascertain the propriety of doing consulting work for CVS, not whether he specifically mentioned CVS in the conversation. Later, Celona stated:

Q. What did you say to this person at the Ethics Commission?
A. Exactly what I said.
Q. What?
A. If I had a consulting agreement with CVS, could I vote on issues regarding pharmacy.
Q. I have a consulting agreement, can I vote on that; right?
MR. MATOS: Objection, your Honor.
THE COURT: Did you say if you have a consulting agreement or you have a consulting agreement?
THE WITNESS: Because I hadn't signed it yet.
**THE COURT: So your testimony is that you said to this person at the Ethics Commission, If I had a consulting agreement with CVS, could I vote on pharmacy issues?**
**THE WITNESS: Yes, and then the next line says I faxed it also to my attorney for his approval.**

Ex. C, 9/18/06 Urciuoli Trial Tr. at 214:7-24 (emphasis added). Prior to being questioned by the Court Celona acknowledged mentioning CVS in his call to the Ethics Commission, thus providing some basis upon which to conclude that his testimony in this trial was inconsistent with prior testimony he had provided. However, Celona's response to the Court's question, including his statement "and the next line says" suggests that Celona possibly understood the line of questioning to relate to what he had testified to in the grand jury.

At the trial in this case, in response to the prosecutor's question whether he had "identif[ied] the company" during the Ethics Commission phone call, Celona testified that he had not. Ex. D, 5/19/08 Trial Tr. at 123:10-19. A review of Celona's prior testimony in this matter and the Urciuoli trial reveals that this response was not inconsistent with much of his prior grand jury and trial testimony. Nevertheless, whatever testimonial inconsistency may exist does not suggest he committed perjury and it certainly does not demonstrate that the prosecutor knowingly presented perjurious testimony. Hemmer, 729 F.2d at 17. See also United States v. Ramirez-Burgos, 1997 WL 268695, *2 (1st Cir. May 21, 1997) (unpublished) (declining to infer knowing use of perjured testimony based on witness's "own prior inconsistent statements, confessed lies in other cases, and prior criminal convictions"). In addition, not only can defendants point to no other evidence of alleged perjury than inconsistencies in Celona's testimony, but the evidence at trial corroborates Celona's testimony that he did not mention CVS by name to the Ethics Commission when he called. Government Exhibits 359-61 are Celona's Yearly Financial Statements filed with the Ethics Commission for 2000 through 2002 respectively. For each of those years, Celona did not identify that he was receiving income from CVS. Ex. E, 5/20/08 Trial Tr. at 65-68. Thus, the record contains other instances in which Celona hid his relationship with CVS from the Ethics Commission.

Furthermore, the prosecutor's follow-up question to Celona concerning why he did not identify CVS was the logical follow-up to Celona's testimony that he did not identify CVS in his Ethics Commission call. The prosecutor's question does not suggest he believed Celona's answer to the prior question was perjurious, but evidences his judgment that an explanation of Celona's

justification for his actions was appropriate.[3]

**(2) Celona's Trial Testimony Concerning His Conversation with Defendant Kramer About His Call to the Ethics Commission Does Not Evidence That His Testimony Was Perjurious**

Defendants claim that Celona committed perjury at trial concerning his conversation with Kramer about his call to the Ethics Commission. Defendants' argument fails for a number of reasons.

Prior to trial, Celona indicated in his testimony that he spoke to both Kramer and Ortiz concerning his Ethics Commission call:

> Q: Did you ever tell Carlos Ortiz and Jack Kramer anything concerning your contact with the Ethics Commission in connection with this consulting agreement?
> A: I told them I had called them, and I referred to what the Ethics Commission had stated, that a similar case with teachers in the legislature, if they voted on something that deals with teachers as a whole, they can vote on it but if it deals with them specifically, that cannot vote on it.

Ex. A, 5/2/06 GJ Tr. at 51:4-13.[4] At trial, in response to questioning by the prosecutor, Celona testified to the following:

> Q: Did you have some follow-up communication with either Mr. Ortiz or Mr. Kramer after you had placed that call to

---

[3] As discussed above, the Court has expressed its view that the significance of Celona's testimony as to "why" he did not mention CVS, is limited. See Ex. E, 5/20/08 Trial Tr. at 15:22-25. See also Ex. E, 5/20/08 Trial Tr. at 16:21-25 (THE COURT: "What he thought is relevant only insofar as it's a response to some act or omission of the Defendants.").

[4] Defendants also point to Celona's May 16, 2006, grand jury testimony as demonstrating the perjurious nature of his trial testimony concerning whether he spoke with Kramer about his Ethics Commission phone call. As discussed above, however, Celona's May 16, 2006, grand jury exchange with the prosecutor concerning what he said "in response to questions by Mr. Sullivan" is of limited relevance because the question misstated his prior testimony on that day. Ex. B, 5/16/06 GJ Tr. 84:7-13.

the Ethics Commission?
A: Follow-up conversation?
Q. Yes.
A. Yes.
Q. Whom did you have that conversation with?
A. With Carlos Ortiz.
Q. And what was stated during that conversation?
A. The situation about the teacher legislation.
Q. Did you indicate to Mr. Ortiz whether or not you had obtained a written or verbal opinion?
A. I didn't say that I had a written or a verbal opinion. I just said that I had contacted them.
Q. Did you explain to Mr. Ortiz how it was you contacted them?
A. I don't recall how I -- if I specifically mentioned the phone call.
Q. Did you have any conversation following your call to the Ethics Commission with Mr. Kramer on this topic?
A. No, sir.

Ex. D, 5/19/08 Trial Tr. at 125:6-126:1. Celona's testimony on cross-examination suggested that his inability to testify concerning whether he spoke with Kramer about the Ethics Commission telephone call was based on his inability to recall any such conversation:

Q. So you did not only tell Mr. Kramer and Mr. Ortiz that you could, based on what the Ethics Commission told you -- withdrawn. You told Mr. Kramer and Mr. Ortiz that the Ethics Commission had given you advice about what matters you could and could not vote on that dealt with CVS; correct?
A. I said that it's my recollection that I gave it to Mr. Ortiz, and I wasn't sure about giving it to Mr. Kramer.
Q. But sitting here today, having looked at your grand jury testimony, you have no doubt that you did tell Mr. Kramer; correct?
A. No. I still can't completely recollect that, sir.

Ex. E, 5/20/08 Trial Tr. at 113:3-15. In response to further questioning from defense counsel, Celona did not disavow his prior grand jury testimony that he had spoken to Kramer about his call to the Ethics Commission:

Q. You don't recollect it, but you did testify about that in the grand jury; correct?
A. In the past, but I can recollect specifically telling Mr. Ortiz.
Q. You don't deny telling Mr. Kramer about that conversation, do you?
A. I can't recollect that I did.
Q. You don't recollect it, but you did testify that you told him in the grand jury; correct?
A. You asked me that three times.
Q. Is the answer the same, you did tell him?
A. It is what it is.
Q. The answer is that you did tell him; right?
A. It was in the minutes, in the transcripts.
Q. And you were telling the truth then; correct?
A. Yes. It's in the transcripts.

Ex. E, 5/20/08 Trial Tr. at 113:23-114:6. A witness testifying under oath commits perjury only if he "provides false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Dunnigan, 507 U.S. at 95. Thus, Celona's inability to recall whether he spoke with Kramer about his Ethics Commission call does not constitute perjury. Even if the Court were to find that Celona's trial testimony on this point is inconsistent with his prior testimony, such inconsistencies do not amount to perjury.[5] Tavares, 93 F.3d at 14; Gary, 74 F.3d at 314.

[5] Incredibly, defendants criticize the government for suggesting that it should not assume the role of determining the truth or falsity of Celona's statements and express concern over leaving that job to the jury. Defs.' Supp. Mem. at 23. It seems unlikely that defendants are unaware that determining the credibility of witnesses is solely within the province of the jury, and thus, their statements to the Court suggesting otherwise are surprising. Indeed, as the Court has already noted, Celona's credibility is "for the jury to decide." Ex. E, 5/20/08 Trial Tr. at 13:13. See also United States v. David, 940 F.2d 722, 730 (1st Cir. 1991) (questions of witness credibility are exclusively within province of jury). Defendants cite various cases as support for their contention that the Court should assume the jury's role and strike Celona's testimony. Defs.' Supp. Mem. at 23-24. None of the cases support defendants' request but instead address whether "a conviction based solely upon the uncorroborated testimony of an accomplice can be upheld, as long as the jury is properly instructed and the testimony is not incredible as a matter of law." United States v. Hernandez, 109 F.3d 13, 15 (1st Cir. 1997). Defendants fail to note the

Nor does, as suggested by defendants, the manner in which the government inquired of Celona whether he had any follow-up communication with "either Mr. Kramer or Mr. Ortiz" suggest that Celona perjured himself. The prosecutor's question which required Celona to clearly identify about whom he was speaking was in part an attempt to avoid concern which the Court and defense counsel had previously expressed concerning Celona's testimony:

> Q. Now, during the course of that meeting, was there any discussion about this consultation situation?
> A. Excuse me? I knocked the microphone.
> Q. During the course of the meeting, was there any discussion about the consulting agreement?
> A. Yes, sir.
> Q. And can you tell us what was discussed in that regard.
> A. They said that in light of the fact --
> MR. CORRIGAN: Objection.
> MR. SMITH: Objection.
> THE COURT: Just a minute. Sustained. It may be stricken. Rephrase. Pin it down to who says what.
> Q. Who was it that spoke about the topic of the consulting agreement?
> A. At first it was Jack.
> Q. Let's focus first, then, on what Mr. Kramer said about the consulting agreement. What did he say?

Ex. D, 5/19/08 Trial Tr. at 111:4-21. This manner of questioning whether Celona spoke or had interaction with either Kramer or Ortiz continued throughout the trial. See Ex. D, 5/19/08 Trial Tr. at 112:25-113:1 ("Did either Mr. Ortiz and/or Mr. Kramer propose a next step to you?). In fact, when first asking Celona about his conversation with the defendants about his Ethics Commission call, the prosecutor asked separately about each defendant. Ex. E, 5/20/08 Trial Tr. at 120:25-121:11. It is hard to imagine how the prosecutor could have posed the question

---

Hernandez court's additional statement that "[a]s always, the credibility of a witness is a matter for the jury." Id.

differently. Under no circumstances can the prosecutor's question about whether Celona had any follow-up communication with "either Mr. Kramer or Mr. Ortiz" be interpreted as possessing the nefarious intent which defendants suggest, especially in light of Celona's repeated testimony that he could not recall having a conversation with Kramer, and his ultimate affirmence of his prior grand jury testimony.

**(3) The Record Does Not Suggest that Celona Committed Perjury When He Testified that He Did No Work for CVS in 2000**

Defendants also claim that Celona committed perjury when he answered "nothing" in response to the prosecutor's question, "[w]hat did you do for CVS during the 2000 calendar year." Ex. D, 5/19/08 Trial Tr. at 142:23-25. Defendants suggest that Celona's testimony on this issue contradicts the information in "a prominent piece of evidence," Government Exhibit 348. Defs.'s Supp. Mem. at 14. Indeed, the prosecutor showed this "prominent piece of evidence" to Celona, who affirmed that it contained a listing of activities in 2000:

Q. And does that contain some sort of description of activities for 2000?
A. Yes, sir.
Q. And who prepared that description?
A. I did.
Q. Is there a reference to the cable television program in that description?
A. Yes. Yes, it -- the activities that I did for 2000.

Ex. D, 5/19/08 Trial Tr. at 154:4-155:9. The prosecutor subsequently inquired of Celona whether he had actually performed many of the activities listed in Government Exhibit 348. Ex. D, 5/19/08 Trial Tr. at 157:7-13. Celona replied "[n]o, sir." Id. Celona provided similar testimony on cross-examination. Ex. G, 5/21/08 Trial Tr. at 58:20-62:24. Whatever characterization applies to Celona's initial answer to the prosecutor that he did "nothing" in 2000, it hardly suggests perjury and defendants' argument that it does warrants no further mention.

**B. In Questioning Celona, the Prosecutor Did Not Violate His Duty of Candor to the Court**

Rule 3.3 of the Rules of Professional Conduct[6] governing candor to the tribunal provides that:

> (a) A lawyer shall not knowingly:
>
> * * * * *
>
> (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary disclosure to the tribunal.

Rule 3.3's standard concerning a lawyer's knowing presentation of false testimony is high – only the knowing presentation of false testimony violates the Rule. Comment 8 to Rule 3.3 provides that "[t]he prohibition against offering false evidence only applies if the lawyer knows that the evidence is false." Rule 3.3 Rules of Professional Conduct, Cmt. 8 (emphasis added). Under the Rule, in accordance with federal case law addressing what constitutes the knowing presentation of perjurious testimony, offering witness testimony which is inconsistent with a witness's prior testimony is not the equivalent of presenting false testimony. Notably, although such was not the case here, "a lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact." Rule 3.3 Rules of Professional Conduct, Cmt. 8 (emphasis added). The reason for such a high bar is obvious – there are limits as to what any lawyer can know with certainty about the veracity of a witness's testimony. To find a violation of Rule 3.3 in the instant case would mean that every time a witness testified inconsistently from the manner in which he had

---

[6] The Rhode Island Superior Court adopted its most current Rules of Professional Conduct, modeled on the ABA's Model Rules, on February 16, 2007.

testified previously, a lawyer would have violated the Code of Ethics. Thus, only the presentation of testimony a lawyer knows to be false, rather than testimony the lawyer reasonably believes to be false, violates Rule 3.3. The distinction in this case, of course, is of no moment – neither occurred.

Instead, the prosecutor's explanation as to how he came to his understanding as to the nature of Celona's prospective testimony provides a good faith basis for asking the questions and illustrates that any suggestion he violated Rule 3.3, or knowingly presented false testimony, is completely unfounded.

> [M]y questions to him were founded upon my interactions with him at the three trial preparation sessions; that the first time I met with him in regard to this case was in Pennsylvania and that when I asked him questions about that call, he indicated to me that he -- that his recollection at this point in time was that he had not mentioned the name of CVS. And he was very specific about that. He persisted in that recollection at each and every one of the two subsequent trial preparation proceedings. I know he had said some different things before, and we had provided those documents to defense counsel. So when I asked that question, I had a good faith belief that that was what he was reporting his recollection was, and I did not believe that to be perjured testimony. I understand it was inconsistent, but I did not believe it to be perjured testimony.

Ex. F, 5/23/08 Trial Tr. at 110:10-111:1. In response to the Court's question whether in preparing Celona for trial prosecutors pointed out to him that when he had previously testified he specifically mentioned CVS to the Ethics Commission, the prosecutor responded:

> I did not specifically point to him. What I did is I asked him to read his testimony. I'll be honest, Judge, my concern was I did not want to tell him how to testify or that he had to testify consistently with anything else. I asked him a question. We asked him to review his grand jury transcripts over the night. And then as we left, we had asked to take those with us because of his concerns, et cetera. So that was what I did, and I based my questions on those preparation

sessions.

Ex. F, 5/23/08 Trial Tr. at 112:7-16. As to Celona's recollection of who he spoke to about the Ethics Commission call, the prosecutor stated:

> We asked him to read his grand jury testimony between the first and second day. He also had some issues with regard to his memory of whether or not he had ever discussed that opinion with Mr. Ortiz or Mr. Kramer. We asked him again to read his grand jury testimony. After he read it, he assured -- in fact, when I left Pennsylvania, he was still within the position that he didn't recall ever discussing it with the two Defendants. When he came here to Rhode Island, he indicated that he now did recall that he had discussed the matter with Mr. Kramer -- Mr. Ortiz but couldn't recall the presence of Mr. Kramer. So we asked him to read his grand jury testimony. I didn't point him to specific sections, Judge.

Ex. F, 5/23/08 Trial Tr. at 111:11-112:1.

Given Celona's persistence during his trial preparation sessions concerning his call to the Ethics Commission, and that he did not remember speaking with Kramer, the prosecutor reasonably and cautiously determined that the best course to take in preparing Celona for trial was <u>not</u> to suggest that he had to testify any certain way – even if that meant that his trial testimony would be at odds with his prior testimony and expose additional areas of cross-examination. Any lawyer preparing a witness to testify walks a fine line between referring the witness to favorable portions of the witness's prior testimony and coaching the witness to testify consistently with his prior testimony even if that prior testimony does not comport with his current recollection. In this case, given the number of times Celona had previously testified concerning the relevant events, the prosecutor exercised sound judgment in letting Celona review the prior transcripts of his testimony and testify in accordance with his best recollection. Allowing Celona to testify in accordance with his current recollection exposed him to additional cross-examination on an issue

for which there already existed numerous areas of potential cross-examination. For example, with respect to Celona's call to the Ethics Commission: (1) when initially asked during cross-examination at the Urciuoli trial, Celona testified three times that he had not called the Ethics Commission prior to changing course and testifying that he made the call; and (2) he initially testified in the grand jury that he used his cell phone to make the call after one of his meetings with Kramer and Ortiz, but later testified that he did not call from his cell phone. Ex. C, 9/18/06 Urciuoli Trial Tr. 202:1-9, 207:19-24; Ex. A, 5/2/06 GJ Tr. at 49:15-25, 50:1-9; Ex. B, 5/16/06 GJ Tr. at 75:25-76:15. An approach to witness preparation that actually added to areas on which Celona could be cross-examined is hardly evidence of nefarious intent by the prosecutor.

In short, the government's decision to request that Celona reread his prior grand jury testimony in the case, but ultimately have Celona testify to what he currently remembered concerning the events in question is a legitimate, reasoned and cautious approach to a witness who, as the Court has acknowledged was "difficult" to deal with. Ex. F, 5/23/08 Trial Tr. at 114:9-10 ("I can't imagine how difficult it was to have to deal with him."). See also Ex. E, 5/20/08 Trial Tr. at 14:6-7 ("I think you need to be very careful with this witness . . . ."). The alternative would have been to attempt to force Celona to testify in accordance with his prior testimony even if that testimony did not accord with his current recollection. Such an approach would have been inappropriate, and the frequency of Celona's prior testimony on the issues in this case would have made such a task likely impossible.

Furthermore, given Celona's testimony concerning the fact that he did not identify CVS in his call to the Ethics Commission, it was appropriate for the prosecutor to have Celona explain "why" he failed to mention CVS in his call. Based on Celona's recollection of his call to the

Ethics Commission during the pretrial preparation sessions, the prosecutor had a good faith basis to ask whether he identified "the company" during the call and "why" he did not. Ex. D, 5/19/08 Trial Tr. 123:17-19, 123:20-124:3. In short, there is absolutely no evidence that the government offered false testimony, and no basis to suggest that the prosecutor violated his duty of candor to the Court.

### D. The Information Celona Provided To Prosecutors During his Pretrial Preparation Sessions Does Not Constitute Discoverable Material Pursuant to Brady and Giglio and Defendants Have Not Been Prejudiced As a Result of When They Learned the Information[7]

At the conclusion of the trial on May 23, 2008, defense counsel questioned whether Celona's failure to recall speaking with Kramer and his position that he had not mentioned CVS in his call to the Ethics Commission were discoverable as Brady/Giglio matter and, thus, should have been provided to defendants in advance of Celona's testimony. Ex. F, 5/23/08 at 114:15-23. Defense counsel's suggestion that Celona's pretrial statements were discoverable is based on an overly expansive view of what constitutes Brady/Giglio material.

"There are three components of a true Brady violation: The evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Stickler v. Greene, 527 U.S. 263, 281-82 (1999). Thus:

> Brady does not require the government to record and provide to

[7] In defendants supporting memorandum, they cite as "Background" to the current motion alleged failures of the government to comply with its Brady/Giglio obligations. Defs.' Supp. Mem. at 4-6. There has been no finding by this Court that the government failed to comply with its discovery obligations in this case. Furthermore, defendants do not suggest, nor has the Court found, that defendants have been prejudiced due to the timing of the government's production of additional materials the Court required it to produce.

> defense counsel verbatim accounts of everything that government witnesses or prospective government witnesses ever said or to provide everything that may be of interest or even useful to defense counsel, regardless of significance.
>
> * * * * *
>
> What Brady does require is that the government disclose evidence, in its possession, that is materially exculpatory. Evidence that is materially exculpatory is "evidence which, in the eyes of a neutral observer, could alter the outcome of the proceedings." United States v. Jordan, 316 F.3d 1215, 1252 (1st Cir. 2003) (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)).
>
> * * * * *
>
> Brady material includes prior statements by a key government witness that are materially inconsistent with the witness's testimony and other information that materially and adversely reflects on the witness's credibility. United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150, 154 (1972).

United States v. Urciuoli, Cr. No. 06-02, Mem. at 6-7 (January 11, 2007 D.R.I.) (Torres, J.) (attached as Ex. H).

The information at issue here, namely Celona's pretrial persistence that he did not mention CVS by name in his call to the Ethics Commission and that he could not recall speaking with Kramer about the call, does not constitute Brady material because neither is materially exculpatory. Celona's failure to mention CVS in his call to the Ethics Commission because he "wanted to give himself some cover" inculpates him in the scheme to defraud because it demonstrates that he intended to conceal his conduct. While the relevance of Celona's testimony on this point to Kramer's and Ortiz's state of mind is limited, if anything it inculpates the defendants in the crime with which they are charged. See Ex. F, 5/23/08 Trial Tr. at 109:20-22 (The Court: "[B]y asking him a series of 'why not' questions, . . . his responses were basically shoveling more dirt on the grave of the Defendants."). Furthermore, Celona's inability to confirm

that he spoke with Kramer inculpates Kramer because it undermines Kramer's ability to suggest to the jury that he relied on Celona's statements to him that he had secured Ethics Commission approval, and thus believed his hiring to be lawful.

In addition, given his prior conflicting testimony on the point, Celona's pretrial statements to prosecutors that he did not mention CVS in his call to the Ethics Commission were not so materially inconsistent with his prior testimony to constitute exculpatory material. For example, as detailed above, prior to trial, Celona testified numerous times concerning his Ethics Commission call. At several points during the Urciuoli trial, Celona denied even making the call. Similarly, Celona's testimony that he did not recall speaking with Kramer about his call to the Ethics Commission also is not necessarily materially inconsistent with his prior testimony. United States v. DeSimone, 488 F.3d 561, 571-72 (1st Cir. 2007) (trial witness's testimony that he did not recall conversation not inconsistent with prior testimony about the conversation).

Furthermore, although Celona's pretrial statements are not properly considered Brady or Giglio material, defendants can point to no prejudice that they suffered as a result of not learning of the information until Celona testified. See United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990) ("[T]he critical inquiry is not why disclosure was delayed but whether the tardiness prevented defense counsel from employing the material to good effect."). Defense counsel cross-examined Celona extensively concerning the issue of whether he specifically mentioned CVS in his call to the Ethics Commission. See Ex. E, 5/20/08 Trial Tr. at 85-106. Celona was also cross-examined about whether he spoke to Kramer about his Ethics Commission call. Ex. E, 5/20/08 Trial Tr. at 106-110. Moreover, Celona ultimately testified to the following:

> Q. And so after the call with the Ethics Commission, you told

> both Mr. Kramer and Mr. Ortiz about what the Ethics Commission said about what you could do for CVS Pharmacy; correct?
> A. Yes.

Ex. E, 5/20/08 Trial Tr. at 110:4-8.

Prior to trial, defendants had numerous prior statements and testimony by Celona concerning the events at issue in the case. Based on those statements and testimony under oath, defendants thoroughly exploited Celona's alleged contradictory statements. Celona has now undergone approximately six days of cross-examination between the Urciuoli trial, the transcripts of which defendants utilized in cross-examining Celona, and this case. It is hard to imagine what additional questioning defendants could have conducted that has not already been done. Having additional information prior to trial to be utilized in cross-examining Celona would have been cumulative. This undermines any contention by defendants that the information was materially exculpatory and certainly does not warrant the relief defendants seek, declaration of a mistrial. "Impeachment evidence, even that which tends to further undermine the credibility of key Government witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist where that evidence is cumulative or collateral." United States v. Dumas, 207 F.3d 11, 16 (1st Cir. 2000) (quoting United States v. Shelton, 588 F.2d 1242, 1248 (9th Cir. 1978). See also United States v. Perez-Ruiz, 353 F.3d 1, 8-9 (1st Cir. 2003) (ability of defense counsel to mount effective cross-examination significant in determining whether delayed disclosure of Brady/Giglio prejudiced defendant); United States v. Shea, 211 F.3d 658, 675-76 (1st Cir. 2000) (declining to grant new trial where prosecution failed to disclose impeachment evidence which was merely cumulative);

Zeigler v. Callahan, 659 F.2d 254, 266 (1st Cir. 1981) (stating that cumulative evidence is not typically material if defense had opportunity to impeach witness by other means); United States v. Gonzalez-Gonzalez, 106 F. Supp.2d 269, 275 (D.P.R. 2000) (where witness was impeached and truthfulness put in doubt at trial, additional impeachment evidence would have been cumulative and did not undermine confidence in fairness of trial). Should the Court, however, determine that defendants should be permitted to further explore these issues in questioning Celona, they are free to do so and the government will make him available for further testimony.

**E. There Has Been No Misconduct, Therefore, No Relief is Warranted**

Defendants claim that the government's presentation of Celona's alleged perjured testimony was an attempt to goad them into moving for a mistrial. Defendants urge that the Court declare a mistrial with prejudice because the Double Jeopardy Clause prevents them from being retried as a result of the alleged prosecutorial misconduct which has occurred.

"A defendant cannot be retried only where the misconduct of the prosecutor is undertaken . . . to prevent an acquittal that he believed at the time was likely to occur in the absence of misconduct." Gary, 74 F.3d at 315 (internal quotations omitted). It is hard to imagine what the government would have to gain by obtaining a mistrial in this case and the government adamantly opposes any such request that the Court declare a mistrial. There is no evidence upon which to find that Celona committed perjury or that the prosecutor knowingly presented perjurious testimony. Nothing that has occurred thus far in the proceedings warrants such extreme action. Moreover, defendants have suffered no prejudice and additional questioning of Celona would provide defendants the opportunity to further explore the nature of his conversation with the Ethics Commission, should the Court deem such a course appropriate. Thus, defendants' request

for a mistrial should be denied. See United States v. McIntosh, 380 F.3d 548, 557 (1st Cir. 2004) (no evidence of intent by prosecutor to provoke mistrial where AUSA consistently opposed declaration of mistrial and "labored" to prevent such an occurrence); Gary, 74 F.3d at 315 (where no evidence to support finding of deliberate prosecutorial misconduct, double jeopardy clause did not bar defendant's retrial and subsequent conviction).

## II. Conclusion

Based upon the foregoing, the government requests that the Court deny defendants' motion for declaration of a mistrial with prejudice or for other appropriate relief.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Robert Clark Corrente
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5002 - fax
robert.corrente@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

/s/ Stephen G. Dambruch
STEPHEN G. DAMBRUCH
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
stephen.dambruch@usdoj.gov

WILLIAM M. WELCH, II
Chief, Public Integrity Section

/s/ Daniel A. Petalas
DANIEL A. PETALAS
Trial Attorney
Criminal Division
1400 New York Avenue N.W., 12th Fl.
Washington, D.C. 20530
(202) 514-1412 - phone
(202) 514-3003 - fax
dan.petalas@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of May, 2008, I caused the within Government's Memorandum to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

David B. Fein, Esq.
Wiggin and Dana LLP
400 Atlantic Street
Stamford, CT 06911

Mark L. Smith
Law Offices of Mark L. Smith
176 Eddie Dowling Highway, Suite 101
North Smithfield, RI 02896

Thomas R. Kiley, Esq.
Cosgrove, Eisenberg and Kiley
One International Place, Suite 1820
Boston, MA 02110

Peter DiBiase, Esq.
91 Friendship Street, 3rd Floor
Providence, RI 02903

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney