**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

---------------------------------------------------x
UNITED STATES OF AMERICA :
: CR 07-09-01 (MML)
v. :
: May 26, 2008
JOHN R. KRAMER and :
CARLOS ORTIZ :
---------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OF LAW OF CARLOS ORTIZ**
**IN FURTHER SUPPORT OF DEFENDANTS' MOTION**
**FOR A DECLARATION OF MISTRIAL WITH PREJUDICE**
**OR FOR OTHER APPROPRIATE RELIEF**

**INTRODUCTION**

On Friday, May 23 the Court found it necessary to address the government as follows:

> THE COURT: ****************************
>
> I will tell you candidly I have some grave concerns regarding the exchange you had with Mr. Celona about whether or not CVS was identified in his telephone call with the Ethics Commission, whether that was an imaginary call, whether it really happened, because of the Government's knowledge of his previous testimony, grand jury and during Urciuoli, that he had mentioned CVS.
>
> The concern I have specifically, *** ***************************, was that once you elicited from him the "no" answer, I believe you had an obligation under 3.3 of the Rules of Professional Conduct, 3.3(a)(4), to correct the record.
>
> Instead, what you did was you underscored that false answer by asking him the series of "why not" questions, which then his responses were basically shoveling more dirt on the grave of the Defendants.
>
> I need an explanation, and I'll hear what you have to say in terms of what remedy I should employ; but I will tell you, I'm deeply disturbed by it.

(May 23 Trial Tr., at 109.)

Such concerns should not infect a criminal trial at all. Here, however, they are morbidly characteristic. While the government no doubt intended to portray for the jury a scheme to defraud committed in deceit of the public, we now find ourselves in the midst of that very activity, perpetrated not by the defendants, but instead by the government.

Allegations of prosecutorial misconduct are not lightly considered and so should not lightly be made. The First Circuit has, for decades, taken the view that two hurdles must be overcome to succeed on such a claim. See, e.g., United States v. Richman, 600 F.2d 286, 291-292 (1st Cir. 1979). First, a defendant must show the offending conduct to have been intentional or deliberate. Such a demonstration, of necessity, eases the mind on the question of whether the

second hurdle, prejudice, was in fact the object of the conduct. But even the "bad intent" of a prosecutor, standing alone, is not enough. Actual prejudice to the defendants must be shown. This is indeed an area where the courts have manifestly chosen to apply the adage "no harm, no foul."[1]

During the ten days of this trial, the government has produced more evidence of its own wrongdoing than the defendants'; and the resulting prejudice to the defendants has been severe and irreparable, but for one necessary—albeit drastic—remedy.

**A. <u>Bad Faith</u>**

How often does a trial court—in the same day—make to the government such remarks as:

"I have some grave concerns [regarding your conduct]" (May 23 Trial Tr. 109:6-7);

"I believe you had an obligation under 3.3 of the Rules of Professional Conduct, 3.3(a)(4), to correct the record" (May 23 Trial Tr. 109:16-18);

"I'm deeply disturbed by [your conduct]" (May 23, Trial Tr. 109:25);

"I have to tell you, it does not look good." (May 23 Trial Tr. 112:17-18);

"I'm not going to let this one slide" (May 23 Trial Tr. 113:18);

"You're in very, very treacherous territory right now" (May 23 Trial Tr. 93:13-14);

"I think you're creating a false impression on the basis of the record that you already have" (May 23 Trial Tr. 94:9-11).

This Court's familiarity with the standard for judging misconduct allegations is a given. As former Supreme Court Disciplinary Counsel, it was this Court's then function to assess

[1] Ironically, the crimes for which the defendants are on trial require only proof of intent. The scheme did not have to succeed. <u>United States v. Potter</u>, 463 F.3d 9, 17 (1st Cir. 2006). They could be convicted without a showing of "actual prejudice." The government is treated to a much more forgiving standard.

attorney actions against the backdrop of the Rules of Professional Conduct. And so it was no surprise at the May 23 sidebar to see before the Court the text of Rule 3.3.

As it should, any analysis of "bad faith" or intent begins here. Intent, deliberateness, bad faith—all are expressions of conduct—in the context of what has happened in this trial—not usually associated with representatives of the government. Here, however, bad faith has permeated this prosecution and poisoned the jury beyond cure.

Viewing the government's conduct through the ethical lens is necessary and advisable for two reasons. First, it makes the task of determining bad faith or intent more straightforward: it is difficult to deny or repudiate bad faith when conduct so clearly violates a disciplinary rule. Those rules exist for the specific purpose of making such judgments fairly. Second, a finding of an ethical violation facilitates the process of evaluating prejudice, for it is clear that by knowing what the violator intended, the court can assess all the conduct—not merely an isolated instance considered in a vacuum—in the context of the entire trial and then determine to what extent the defendants have been prejudiced, as well as the likely effects of possible remedies.

As this Court noted on Friday, Rule 3.3(a) actually sets forth two distinct duties, applicable here with respect to Celona's testimony concerning the identification of CVS in his call to the Ethics Commission. The first is a flat prohibition, precluding a lawyer from offering evidence the lawyer knows to be false. See, G. Hazard and W. Hodes, The Law of Lawyering,

§29.12 (3d Ed., Aspen, 2001).[2] Second, the Rule imposes a corrective duty on the prosecution. The first full sentence of Rule 3.3(a)(3)[3] provides:

> If a lawyer, the lawyer's client or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

The lawyer's obligation to take "reasonable remedial measures" also applies by virtue of clause (b) of the Rule when the lawyer knows the person is engaging or has engaged in criminal or fraudulent conduct related to the proceeding. Regardless of the prosecutor's stated belief that Celona's direct testimony in this case reflected Celona's "present recollection", that testimony cannot be reconciled with his prior testimony in the Urciuoli trial. Here, Celona's direct testimony was that he did not identify CVS in his call to the Ethics Commission; there, his direct response to the question posed by Judge Torres was the opposite. Under the circumstances of this case, the two responses, both under oath, and both material to the point in question, are irreconcilable and, a fortiori, Celona engaged in criminal or fraudulent conduct related to this proceeding by delivering those contradictory messages to the court and the jury.[4]

The duty to take reasonable remedial measures is also articulated in the Restatement (Third) of The Law Governing Lawyers, §120(2), which states:

> If a lawyer has offered testimony or other evidence as to a material issue of fact and comes to know of its falsity, the lawyer must take reasonable remedial

[2] The government has indicated it had a good faith belief that Celona was reporting his present recollection when he testified that he did not identify CVS (May 23 Trial Tr., at 110:22-25). Such a belief may preclude the imposition of discipline, see, Obert v. Republic Western Ins. Co., 398 F.3d 138, 146-147 (1st Cir. 2005), and likely would also provide a defense to a subornation charge. It does not, however, eliminate the need for relief, nor in any way addresses the second duty imposed by Rule 3.3(a)(3) and (b).

[3] Rule 3.3. of the Rhode Island Rules of Professional Conduct were amended on February 16, 2007, effective on April 15, 2007. The Rule is applicable to the prosecution of this case by virtue of D.R.I. L.R. 2080(a) and (b).

[4] That fact clearly triggered a duty under Rule 3.3(b) to take remedial measures whether or not the prosecutor knew the "present recollection" was false. Moreover, the government was put on notice nearly two years ago—by Judge Torres himself—that Celona's credibility was a problem (see Urciuoli Trial Tr., September 29, 2006, at 47:6-12).

> measures and may disclose client information when necessary to take such a measure.

Comment (d) to section 120 notes that the provision applies not only when the lawyer knows the testimony to be false, but also where the witness is "only guessing or reciting what the witness has been instructed to say." The Section intentionally uses the words "false testimony" and "false evidence" in contradistinction to "perjury" because it is meant to apply whether the elements of perjury are met or not. "'Untruthful' in the context of the Rhode Island ethical rules means knowingly false. RIRPC 3.3(a)(1); *In re Schiff*, 684 A.2d 1126, 1127 (R.I.1996)." Obert v. Republic Western Ins. Co., 398 F.3d at 143. While knowledge is required on the part of the lawyer, the lawyer cannot "ignore what is plainly apparent"—in this case, the Urciuoli transcript. See, Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 590 (9th Cir. 1983)(firm's knowledge of other facts made it improper to accept client's denial of those facts at face value), and United States v. Kelly, 543 F.Supp. 1303, 1309-1310 (D.Mass. 1982) (citing U.S. Dept. of Justice, "Proving Federal Crimes" for the proposition that a prosecutor may not present evidence he actually knows, or should know, to be false).

In this case, there can be no question that the government failed to take remedial measures when Celona provided the testimony in issue; instead of following the "narrative approach" familiar to defense lawyers for decades, the prosecutor deliberately posed a series of "why not" questions, eliciting answers the court analogized to "shoveling dirt on the defendants' graves." (May 23, Trial Tr., at 109:21-22). To be sure, the question of what remedial measures are appropriate when trial counsel are surprised by false testimony has roiled the legal community for years. That upset is largely a function of the tension between the Sixth Amendment right of those accused of crimes to have effective assistance of counsel and the ethical obligation of the lawyer representing a defendant who intends to or has already perjured

himself. Despite the Supreme Court's handling of this tension in Nix v. Whiteside, 475 U.S. 157 (1986), the bar continues to wrestle with the parameters of the Rule, as reflected by the frequency with which Rule 3.3 has been amended.

There is no such tension created here, however, as the prosecutor's special responsibilities under Rule 3.8 of the Rules of Professional Conduct reinforce rather than tug at his responsibilities under Rule 3.3. Client confidentiality and zealous representation are simply not in the mix when a prosecutor deals with a witness providing false and misleading testimony. Mistrial with prejudice is the only remedy that makes sense to the defendants.[5]

Rule 3.3 is captioned "Candor to the Tribunal" and the affront is, therefore, to the Court. If forewarned, the court would not have been powerless to defend itself, the jury and the defendants. Hazard & Hodes, §29.21.[6] That there has been an ethical violation and a clear case made of bad faith and government misconduct, we turn to the finding of prejudice.

**B. Prejudice**

The government's pattern of misleading the jury in this case is itself demonstrative of the prejudice suffered by the defendants. The incident that occurred on Friday with Susan DelMonico was only one in a series of efforts by the government to mislead and deceive the jury. Some, including Ms. DelMonico's appearance itself, were prejudicial to the defense. Although the defense objection was sustained, the jury heard the exchange:

---

[5]Reasonable remedial measures could have included the government's moving or stipulating to striking or withdrawing Celona's testimony. Restatement, §120, Comment (h). See also, C. Wolfram, Modern Legal Ethics, §13.10.4 (1986) (noting that a prosecutor is subject to at least the same level of restraint as defense counsel and that while "knowledge" may be required for disciplinary action, even unwitting use of false evidence may form the basis for reversal or new trial). Here, the prejudice coupled with the prosecutorial bad faith, requires a mistrial with prejudice, i.e., with no opportunity for retrial.

[6]While mistrial would have been unavoidable in a non-jury proceeding (id.), the defendants can envision no corrective action short of dismissal with prejudice that will serve the interests of justice in this jury trial. Id.

Q. When you would see Senator Celona at events that you attended with Carlos Ortiz or Jack Kramer, at any time did anyone tell you that then Senator Celona was a paid consultant for CVS?
MR. KILEY: Objection.
THE COURT: Sustained.

This pattern was followed throughout the trial, however. The government elicited or attempted to elicit testimony that certain of its witnesses were not told by the defendants that Celona was being paid by CVS as a consultant. (See, May 12 Trial Tr. 119:3-6 [James Fegan]; May 13 Trial Tr. 30:1-18 [Paul DeRoche]; May 14 Trial Tr. 26:16-27:1 [Clark Curtis]; May 16 Trial Tr. 23:13-21 [Christine Egan]). In each of these instances, the government pursued the same route it attempted to take with Ms. DelMonico, i.e., inquiring of a witness as to whether the person was told by either defendant of the Celona consulting arrangement, and eliciting a negative response, without any proffer or effort to establish that there was a reason the witness should have known in the first place. The government never produced any evidence that there was a duty on the part of either defendant to report this relationship to any of these witnesses, nor any evidence that there was something about the witness' position that required him/her to have known about it or to have been told about it by either of the defendants. The Court finally put a stop to this concerted effort to mislead the jury when the government tried again to do it with the final witness in the case, and noted that its attempt was "creating a false impression on the basis of the record that you already have" (May 23 Trial Tr. 94:9-11)."

Two other efforts to mislead the jury were particularly prejudicial.

Kramer and Ortiz's "approaching" Celona during the 2000 legislative session

The government attempted to mislead the jury by eliciting testimony from Celona suggesting that he was "approached" by Kramer and Ortiz about the AWP legislation during the 2000 legislative session. The prosecutor asked "Did anyone else approach you on behalf of CVS

during the 2000 session?" (May 19 Trial Tr. 135:23-24). Conspicuously absent was any reference to AWP. That question elicited the response "Yes. Carlos and Jack." (May 19 Trial Tr. 135:25). The question and answer immediately followed a series of questions and answers indicating that the contact on AWP on behalf of CVS was through Joe Walsh and his office. The different phrasing in the questions improperly created a nonexistent link between the legislation and Kramer and Ortiz's "approaching" Celona. The prosecutor's very failure to ask Celona what the Kramer and Ortiz "approach" during the 2000 legislative session was about actually demonstrates the impropriety of this tactic, because he knew that asking that question would elicit an answer unrelated to the AWP legislation. Most telling, the prosecutor knew that in one of the FD-302 reports, Celona told the agents that he did not have any discussion with CVS about the AWP legislation after he executed his consulting agreement in 2000. (Celona FD-302, 05/02/06, at p. 3). Thus, the prosecutor was very deliberate and calculating in asking what he did in the manner in which he did so. The misleading effect was then compounded by questions relating to Celona's attendance at a meeting at CVS on March 13, 2000, four days after he had "taken a walk" on the 2000 AWP vote. (May 19 Trial Tr. 139:2 et seq.). A presentation of CVS's views on legislation after the vote could not have influenced the vote.

Todd Andrews and the Ortiz Meeting

The government elicited testimony from former CVS Communications Director Todd Andrews to the effect that Mr. Ortiz asked Andrews not to tell anyone about a conversation in which they had discussed the Celona consulting relationship. (May 23 Trial Tr. at 53:7–22.) Immediately after discussing that conversation, the prosecutor asked Andrews, "During the course of the conversation, did Mr. Ortiz say anything about you disclosing this information to

anybody else?" By doing so, the government strongly implied that Ortiz's request related to the Celona relationship.

In reality, however, the conversation was a long gripe session, as Andrews acknowledged, and it included complaints about Ortiz's boss, Kramer, among other topics. (May 23 Trial Tr. 65:8–25.) Even on re-direct examination, after the defendants had raised the issue on cross-examination, the government continued to lead Mr. Andrews in an effort to establish that Ortiz's request related specifically, at least in part, if not solely, to the Celona issue. (May 23 Trial Tr. 84:10–85:8.). This circumstance is particularly egregious because the government was aware, from Mr. Andrews' prior statements and Grand Jury testimony that Mr. Ortiz' statement to Mr. Andrews about "keeping the conversation quiet" related not to whether it was proper to hire Celona but to the "gripe session" more generally which was about his boss, Mr. Kramer. The government, initially restricted by the Court's articulation of a Bruton problem, which prohibited delving into the question of Mr. Kramer's role in the hiring of Celona, sought instead to misuse this circumstance to mislead the jury into believing that Mr. Ortiz wanted to keep the Celona issue secret—presumably a part of the "deception" element—from the public, when in reality Mr. Andrews understood what he was told to keep confidential was Mr. Ortiz' griping about Mr. Kramer.

The prejudice to Mr. Ortiz is irreparable. In its use of Mr. Andrews, the government clearly sought to cause the jury to infer consciousness of guilt on the part of Mr. Ortiz, when the truth is that the witness had a completely different understanding of the conversation.

**C. Remedies**

The defendants have asked the Court to impose the harshest of remedies, a mistrial with prejudice, resulting in termination of this prosecution. There can be no other just result.

Instead of a search for the truth, this proceeding has been characterized by the government's efforts to obfuscate the facts and lead the jury away from its appointed task. While we may take the view that the government's actions are based on its recognition of a vacuous case and an effort to convict at all costs, or to justify its public investment in Celona, our opinion on that score is superfluous.

The facts, as they relate to the remedy, are inescapable. The government chose, deliberately and purposefully, to place before the jury a witness, John Celona, who himself deliberately and intentionally lied to that jury about a matter central to the prosecution and defense of this case. As the defendants pointed out initially, and as the Court acknowledged, the issue of the CVS identification in the Ethics Commission phone call was not a collateral matter (May 20 Trial Tr. at 13:4-10). It is central to the case. It is the reason for the introduction of state law into the jury instructions. It is the basis for the government's request for a willful blindness instruction (May 20 Trial Tr. at 10:6-11:2). It is not matter that has no material bearing on the outcome of this trial.

The facts are also that the government, through its handling of Celona, and by other actions with other witnesses, taken throughout this trial, has set itself upon a course designed to mislead the Court and the jury—to deceive them with its own purpose to convict these defendants and to preserve John Celona's continuing status as a witness. In the course of this endeavor, the government has clearly committed prosecutorial misconduct and violated the Rules of Professional Conduct. To make matters worse, the government has attempted to conceal their efforts from defense counsel by failure to disclose <u>Brady/Giglio</u> material generated only weeks before the trial began.[7]

---

[7]This argument is developed in the supplemental memorandum filed on behalf of Mr. Kramer and adopted here.

It is, unfortunately, as unavoidable as it is unpleasant to recognize this behavior for what it is: a desperate and unethical attempt by the government to secure a conviction using testimony from a person that the Court itself has acknowledged is "a horrible witness" (May 23 Trial Tr. 114:9) and whose testimony on a crucial issue in the case was "completely not credible." (May 20 Trial Tr. 13:11-12). The court cannot "let this one slide." (May 23 Trial Tr. 113:18). Dismissal with prejudice is the only adequate remedy.

The defendant understands and appreciates the difficulty associated with imposing the most severe remedy allowed by law. While its severity does not in any way make the remedy of dismissal unwarranted, the Court may seek an alternative. In that regard, Mr. Ortiz suggests that the only other remedy that could serve the purposes needed to be served here would be to strike Celona's testimony. In the case of an ordinary witness, testifying on a collateral matter, that remedy might be sufficient. Here, however, an instruction to the jury to disregard the stricken testimony would clearly be impossible to follow, given Celona's status in the case. But striking the testimony—and thereby eliminating it from the record—would, of necessity, require the granting of the defendants' Rule 29 motions.

## CONCLUSION

Mr. Ortiz joins in and adopts the contents of the supplemental memorandum submitted on behalf of Mr. Kramer and urges this Court to terminate this prosecution by either declaring a mistrial with prejudice or striking Celona's testimony and granting the defendants' Rule 29 motions.

Respectfully submitted,

CARLOS ORTIZ,
By his Attorneys,

/s/ Mark L. Smith_____________
Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
(401) 769-4120
Lawmls@aol.com

Thomas R. Kiley
*Pro Hac Vice Counsel*
Cosgrove, Eisenberg and Kiley, P.C.
One International Place, Suite 1820
Boston, Massachusetts 02110
(617) 439-7775
trkiley159@aol.com

**CERTIFICATE OF SERVICE**

I, **Anthony M. Traini**, certify that on the 26th day of May, 2008, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by email to the following party by operation of the Court's electronic filing system:

- **Stephen G. Dambruch**
  stephen.dambruch@usdoj.gov

- **Daniel A. Petalas**
  Dan.Petalas@usdoj.gov

- **Peter Sprung**
  peter.sprung@usdoj.gov

- **AnnaLou Tirol**
  annalou.tirol2@usdoj.gov