**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

---------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CR 07-09-01 (MML) |
| v. | : | |
| | : | May 28, 2008 |
| JOHN R. KRAMER and | : | |
| CARLOS ORTIZ | : | |

---------------------------------------------------x

**DEFENDANTS' OBJECTION TO JURY INSTRUCTION ON WILLFUL BLINDNESS**

The government has proposed that the Court's final instructions to the jury include an instruction on willful blindness. (See Trial Memorandum of the United States, dated May 6, 2008 ("Gov't Mot."), at 29.) For the reasons set forth below, the government's proposed instruction should be rejected, and the Court should decline to deliver any jury instruction regarding willful blindness.

**ARGUMENT**

A willful blindness instruction is inappropriate in the present case. Such an instruction is not appropriate unless: (1) the defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as requiring -- rather than permitting -- an inference of knowledge. United States v. Griffin, Nos. 07-1475 & 07-1477, 2008 WL 1759161 at *4 (1st Cir. April 18, 2008) (quoting United States v. Coviello, 225 F.3d 54, 70 (1st Cir. 2000)). "The purpose of the willful blindness theory is to impose criminal liability on people who, recognizing the likelihood of wrongdoing, nonetheless consciously refuse to take basic investigatory steps." United States v. St. Michael's Credit Union, 880 F.2d 579, 585 (1st Cir. 1989). Here, the government cannot offer any facts suggesting a conscious course of deliberate ignorance.

The First Circuit has explained that "mere negligence or mistake in failing to learn the facts is not sufficient. There must be a deliberate effort to remain ignorant of the fact." United States v. Keene, 341 F.3d 78, 83 (1st Cir. 2003); see also United States v. Brandon, 17 F.3d 409, 453 (1st Cir. 1994) ("[t]he danger of an improper willful blindness instruction is the possibility that the jury will be led to employ a negligence standard and convict a defendant on the impermissible ground that he should have known an illegal act was taking place"). "In determining whether the facts suggest the type of deliberate avoidance warranting an instruction, [the court] must consider whether the record evidence reveals 'flags' of suspicion that, uninvestigated, suggest willful blindness." Coviello, 225 F.3d at 70; see also United States v. Frigerio-Migiano, 254 F.3d 30, 35 (1st Cir. 2001) ("where there are prominent 'red flags' that signal criminal activity is afoot, a jury may infer that a defendant deliberately ignored facts which would have otherwise been obvious to a reasonable person").

Here, there has been no evidence that the defendants were under any legal obligation to investigate John Celona's state law obligations, and there were no "red flags" that might have alerted Kramer or Ortiz to criminal behavior by Celona. Certainly, in light of Rhode Island's part-time citizen legislature, the mere fact of hiring a consultant who also happened to be a legislator was not a warning sign. Nevertheless, the uncontroverted evidence has shown that before Kramer and Ortiz entered into the consulting agreement with Celona, they specifically asked him whether such an arrangement would pass muster with the Rhode Island Ethics Commission -- as even the government has acknowledged. (May 12 Trial Tr. 28:12–15.) The defendants did not sign the contract with Celona, and CVS did not make a single payment to Celona, until Celona had reported back to the defendants that he had received approval from the Ethics Commission. In doing so, Kramer and Ortiz relied upon the assurance they received from

John Celona, who at the time was a sitting State Senator in his third term, and in his second decade as a public servant at both the municipal and state level. There is not a scintilla of evidence to suggest that there was even a hint that any sort of "criminal activity was afoot," let alone "prominent red flags" indicating such. See Cassiere, 4 F.3d at 1023 (noting in prosecution for wire fraud and conspiracy to commit wire fraud that defendants may not be convicted "on the impermissible ground that he should have known an illegal act was taking place") (internal quotation omitted).

There is absolutely no evidence whatsoever that Celona's conduct during the life of the consulting relationship raised a "red flag" that would give rise to any inference of a conscious course of deliberate ignorance by the defendants. For example, there is no evidence whatsoever of either defendant's knowledge of Celona taking any extraordinary steps to advance CVS's legislative agenda that would have put them on notice of a likelihood that Celona might have misunderstood the agreement or was being improperly influenced by it. Rather, the evidence shows that during the four-year period of the agreement he supported CVS's position on some measures, and opposed CVS's position on others, including on matters that were a priority for CVS.[2] There is not even any evidence of Celona making any efforts to keep the defendants informed of legislative developments. In short, Celona's conduct during the life of the agreement would have in no way raised a "red flag" that there was a likelihood that Celona had interpreted the agreement as anything other than a permissible public relations contract. Because the government's evidence simply cannot "support an inference that [the defendants] deliberately

[2] (See May 21 Trial Tr. at 37:9-12; 42:3-6 (Celona supported legislation to increase the minimum wage; CVS opposed such legislation); May 13 Trial Tr. at 124:22–125:20; May 21 Trial Tr. at 42:25–44:20 (Celona supported legislation that would permit treble damages; CVS opposed such legislation); May 21 Trial Tr. at 45:1–48:6 (Celona scheduled for a hearing in the Corporations Committee, and voted in favor of, a resolution regarding Canadian pharmacies; CVS opposed the resolution).)

shut [their] eyes to the true facts," United States v. Singh, 222 F.3d 6, 11 (1st Cir. 2000), the government is not entitled to an instruction regarding willful blindness.

Indeed, the facts of the present case stand in stark contrast to those of cases in which the First Circuit has found sufficient red flags to justify a willful-blindness instruction. For example, in Brandon, the First Circuit held that a willful blindness instruction was appropriate where there was evidence that the defendant, a real estate developer charged with bank fraud and conspiracy to commit bank fraud, "tried to avoid learning of particular buyers' use of dischargeable mortgages for their down payments," including telling buyers that he "didn't want to know anything about it," and "gestur[ing] in a way that one buyer described as trying to say 'not in front of me.'" Brandon, 17 F.3d at 452.

Similarly, in United States v. Epstein, 426 F.3d 431 (1st Cir. 2005), the First Circuit found that there were a significant number of "'flags' of suspicion that, uninvestigated, suggest willful blindness" in a case involving, among other things, charges of mail fraud and conspiracy to commit mail fraud. Id. at 441. The defendant claimed that he had not known of a scheme to defraud the owners of timeshare units that was taking place at the appraisal company where he worked. Id. at 435–36. The First Circuit rejected the defendant's argument, noting "the sheer volume of [fraudulent] appraisals that [the defendant] signed" and defendant's handling of customer complaints claiming that "the whole scheme was a scam,"as well as:

> (1) the fact that the appraisals he signed stated that they were based on on-site inspections even though [defendant] had not made any such inspections and never inquired whether they were made; (2) the fact that he knew nothing about the company producing the reports, its methods or the training of it employees, and never asked [his supervisor] about it; (3) the fact that [his supervisors] generated such a large number of appraisals so quickly even though [defendant] knew that both were inexperienced in the real estate business; (4) the fact that he was not questioned when he signed the appraisals for [his supervisor] using a false name; and

> (5) the fact that he was not questioned when he asked [his employer] to issue paychecks in his wife's name.

Id. at 441.

In the present case, unlike the circumstances in Brandon and Epstein, there is not a single piece of evidence to suggest that the defendants should have looked more deeply into any aspect of the consulting relationship, let alone evidence to suggest that Kramer and Ortiz deliberately ignored criminal activity. Accordingly, the government cannot satisfy the requirements for justifying a jury instruction on the issue of willful blindness.

## CONCLUSION

For all the foregoing reasons, the defendants respectfully request that the Court decline to give any jury instruction suggesting that the defendants may be convicted pursuant to a theory of willful blindness.

Respectfully submitted,

JOHN R. KRAMER,
By his Attorneys,

/s/ Peter DiBiase______________
Peter DiBiase
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903-3819
(401) 831-5020
attorney_pad@yahoo.com

David B. Fein
Scott D. Corrigan
*Pro Hac Vice Counsel*
WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, CT 06901
(203) 363-7600
(203) 363-7676 (fax)
dfein@wiggin.com
scorrigan@wiggin.com

CARLOS ORTIZ,
By his Attorneys,

/s/ Mark L. Smith______________
Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
(401) 769-4120
Lawmls@aol.com

Thomas R. Kiley
*Pro Hac Vice Counsel*
Cosgrove, Eisenberg and Kiley, P.C.
One International Place, Suite 1820
Boston, Massachusetts 02110
(617) 439-7775
trkiley159@aol.com

## CERTIFICATE OF SERVICE

I, **David B. Fein**, certify that on the 28th day of May, 2008, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by email to the following party by operation of the Court's electronic filing system:

- **Stephen G. Dambruch**
  stephen.dambruch@usdoj.gov
- **Daniel A. Petalas**
  Dan.Petalas@usdoj.gov
- **Peter Sprung**
  peter.sprung@usdoj.gov
- **AnnaLou Tirol**
  annalou.tirol2@usdoj.gov