IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * C.R. NO. 07-009ML
*
UNITED STATES OF AMERICA *
*
VS. * MAY 28, 2008
* 2:00 P.M.
JOHN R. KRAMER and *
CARLOS ORTIZ *
*
* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Charge Conference)

APPEARANCES:

FOR THE GOVERNMENT: STEPHEN G. DAMBRUCH, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

DAN PETALAS, ESQ.
Department of Justice
Criminal Division - Public Integrity
1400 New York Avenue, N.W.
Washington, D.C. 20530

FOR THE DEFENDANT, KRAMER: PETER DiBIASE, ESQ.
91 Friendship Street, 3rd Floor
Providence, RI 02903

SCOTT CORRIGAN, ESQ.
Wiggin and Dana, LLP
400 Atlantic Street
Stamford, CT 06911

FOR THE DEFENDANT, ORTIZ: MARK L. SMITH, ESQ.
Law Offices of Mark L. Smith
176 Eddie Dowling Highway
Suite 101
North Smithfield, RI 02896

ANTHONY TRAINI, ESQ.
56 Pine Street, Suite 200
Providence, RI 02903

THOMAS R. KILEY, ESQ.
Cosgrove Eiseberg & Kiley, P.C.
One International Place
Suite 1820
Boston, MA 02110

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

28 MAY 2008 -- 2:00 P.M. IN CHAMBERS

THE COURT: This is a conference with counsel to discuss the draft jury charge, and I'm going to go through all of them including the Part A general instructions in case anybody has any issues with any of those. There shouldn't be; but if you do, tell me now.

Anyone have any problem with Number 1, just the introduction?

MR. PETALAS: Not the United States.

MR. CORRIGAN: No, your Honor.

THE COURT: Numbers 2 and 3?

MR. PETALAS: None, your Honor.

MR. CORRIGAN: None, your Honor.

THE COURT: Numbers 4 and 5?

MR. PETALAS: No, your Honor.

MR. CORRIGAN: No, your Honor.

THE COURT: 6, 7 and 8?

MR. PETALAS: No, your Honor.

MR. KILEY: No, your Honor.

THE COURT: Thank you, Mr. Kiley. Number 9?

MR. PETALAS: No, your Honor.

MR. CORRIGAN: No, your Honor.

THE COURT: 10?

MR. PETALAS: No, your Honor.

MR. CORRIGAN: No, your Honor.

THE COURT: 11, 12 or 13?

MR. PETALAS: None.

MR. CORRIGAN: No, your Honor.

MR. TRAINI: Your Honor, on 13, I just wanted to put something to the following effect in that one, if I can read Mr. Kiley's writing. The labels Government and Kramer used by the parties have no significance. Whether the exhibits were offered by the Government or a Defendant or by stipulation, all the exhibits admitted in full -- admitted as full exhibits may be considered as to each party or all parties.

THE COURT: Does the Government have any objection to adding that language?

MR. PETALAS: I don't have any objection.

THE COURT: Okay. So we'll add that language to the end of Number 13. That was a good catch, Mr. Kiley.

MR. KILEY: Thank you, your Honor.

THE COURT: Number 14?

MR. PETALAS: No issues, your Honor.

MR. CORRIGAN: No, your Honor.

THE COURT: Numbers 15 and 16?

MR. PETALAS: Nothing, your Honor.

THE COURT: Number 17 --

MR. TRAINI: Excuse me for one second, your

Honor.

MR. CORRIGAN: We might as well raise it now. Your Honor, we have, on the defense side, been working on an *Osorio* type instruction to deal with the *Brady* violation that your Honor found yesterday. The First Circuit in *Osorio* did note that an instruction in a situation like the one that has arisen in this case is appropriate. We have language that we could submit --

THE COURT: You're going to need to do that very soon.

MR. CORRIGAN: Yes, your Honor. In fact, I have a copy here. I can give you a copy and a copy for Mr. --

THE COURT: Do you have the language that you're proposing?

MR. CORRIGAN: Yes, your Honor.

MR. TRAINI: We do, your Honor.

THE COURT: Would you hand a copy over to Mr. Petalas.

MR. CORRIGAN: Yes, your Honor. Yes.

MR. TRAINI: I'll send one up here. We're trying to deal with this in a couple of different places, your Honor.

MR. PETALAS: Your Honor, if I may, I'd like a chance to review the case law on this and get back to

the Court as soon as I can.
THE COURT: Could I have a cite on *Osorio*? You have it down below. I see it.
MR. TRAINI: Yes, your Honor.
THE COURT: Where would you want that, after 14, or should it go in the section -- well, I think after 14.
MR. CORRIGAN: Yes, your Honor.
THE COURT: At this point, I can't tell you whether it's going to be in or out. I obviously need to hear from the Government on that. Did you want to confer with Mr. Dambruch on that now?
MR. PETALAS: I can, but I definitely would like to just look at the case law.
THE COURT: Okay.
MR. TRAINI: Your Honor, I can give you my copy of the case if you want it, unless you have it.
THE COURT: Sure. Anything with Numbers 15 or 16? Hearing none, we'll move on.
Number 17, you will notice Exhibit Number XX. We had some difficulty figuring out what the exhibit number is. As soon as we locate it, we will put that number in.
MR. KILEY: I think it is 394. This is the transcript?

THE COURT: Is it 394? We'll double check that, in any event. And what I did there was to include a portion of the limiting instruction I gave at the time the exhibit itself was admitted to remind them that that was the one it dealt with.

MR. KILEY: May I say something about that particular piece? Only that I know that the words jarred my client, and it was "in considering the case against." The word "against" troubled my client. So if you could phrase it involving or something along those lines, your Honor.

THE COURT: Only as they relate to his actions and state of mind.

MR. KILEY: That would be fine, your Honor.

MR. TRAINI: Is that in 17, your Honor?

THE COURT: Yes. Does the Government have any objection to including that phrase instead of what was there?

MR. PETALAS: That's fine.

THE COURT: Okay. You don't have a problem with my saying as against Mr. Kramer?

MR. KILEY: I'm sure Mr. Corrigan does not.

MR. CORRIGAN: Well, if we're going to make it consistent, I'd prefer it to be consistent language.

THE COURT: Well, I think I took it from what

you gave me.

MR. CORRIGAN: We gave you the against and against.

THE COURT: Yes, you did.

MR. TRAINI: Actually, your Honor, when Mr. Corrigan gave you that language, we didn't catch it fast enough or we would have made this change ourselves. So we would prefer to have the related language.

THE COURT: And not as they relate to Mr. Kramer?

MR. CORRIGAN: Yes, your Honor.

THE COURT: That's kind of awkward, but let's work with that.

MR. PETALAS: Or instead of as they relate to his actions and state of mind, you might say as they relate to Mr. Ortiz and not as they relate to Mr. Kramer.

THE COURT: But it really is as to actions and state of mind to Mr. Kramer's, and I may just repeat it. All right.

Number 18, does anyone have any problem with that?

MR. PETALAS: No, your Honor.

MR. CORRIGAN: Your Honor, on 18, the First

Circuit's pattern jury instruction Section 2.02 has a credibility of a witness charge relating to prior inconsistent statements, and it's bracketed where you can fill in the name of the particular witness.

We submit that in this case, given the testimony of Mr. Celona, that's a perfectly appropriate charge in this instance. And along with that, your Honor, there's also, again, language from the *Osorio* case about prior inconsistent statements of a witness and impeachment by that route. We have a proposed charge related to that.

THE COURT: What number is it in your proposed?

MR. CORRIGAN: I don't have -- well, in the supplemental one, not in the old ones. This would be something that I would hand now to the Court and to Mr. Petalas, and then we can file them electronically after the --

THE COURT: Do you have it with you now?

MR. CORRIGAN: Yes, I do, your Honor. I figured just to preview for your Honor, we also have a cooperating witness charge that we would like to have considered.

THE COURT: I was going to ask you about that.

MR. TRAINI: We have one of those, too.

THE COURT: I didn't include it, and I don't

think you had requested it.
Mr. Petalas, on the inconsistent statements one that's been submitted --
MR. PETALAS: Your Honor, again, if I may, I'd really like to be able to look at *Osorio* and the other cases on this issue.
THE COURT: Well, this is a pattern instruction.
MR. CORRIGAN: Your Honor, if I may, the first paragraph is taken from the pattern instruction. The second paragraph is taken from *Osorio*, an instruction given that was approved by the First Circuit in *Osorio*.
THE COURT: I will tell you, though, I'll take a look at *Osorio*. I'll take a look again at the pattern. I intentionally tried to deal with the issue in a more neutral manner because I'm concerned about shining a spotlight on a particular witness.
I think that's clearly something you get to do in argument, but whether I ought to do it in an instruction is something I have some concerns about. If the Government doesn't object, it's not a problem.
MR. CORRIGAN: Your Honor, given what has transpired in the last two court days here, on Friday and on Tuesday, we submit that whereas it may be your Honor's practice not to single out a particular witness, given what's happened here, we think not only

is it okay to do it in the normal case because the First Circuit's pattern jury instructions permit it, but in this particular case where what has happened with Mr. Celona, we submit we should get this charge.

THE COURT: I understand that. That doesn't mean I'm going to give it, and I'll tell you tomorrow. Do you have the cooperating witness charge?

MR. CORRIGAN: Yes.

THE COURT: Because that's one that I think -- and you need to file all of these electronically so that if anyone's looking at this record, they know what you're talking about.

MR. CORRIGAN: Yes, we will file them electronically, your Honor.

MR. PETALAS: Is this a two-pager?

MR. CORRIGAN: Oh, I'm sorry.

MR. PETALAS: Thank you.

MR. CORRIGAN: You're welcome.

THE COURT: What's the Government's position on the cooperating witness proposed charge?

MR. PETALAS: Your Honor, this is one it looks like there's citation to additional authority as well. I'd like to see how, if at all, it varies from the pattern under the pattern First Circuit charge. He is clearly a cooperating witness, and it may be

appropriate.

THE COURT: I think it is appropriate. You can count on getting some form of a cooperating witness charge.

MR. CORRIGAN: And then --

MR. TRAINI: We have one piece of this left, Judge.

THE COURT: And that will come in after Number 18. I think it fits there. And did you have something else along those lines?

MR. TRAINI: We do, your Honor. We just have a short impeachment by guilty plea instruction.

THE COURT: I will not give this one specifically. What I generally do, although it's not included in Number 18, is a -- it's part of that string in the second paragraph on page 14, whether or not that person has been convicted of another crime. Usually it fits right there. So I can incorporate it there.

MR. TRAINI: Just so I understand, Judge, you're just not going to give it as a stand-alone?

THE COURT: Right. It's incorporated into Number 18.

MR. CORRIGAN: I'm sorry, your Honor, you said you wouldn't incorporate it into --

THE COURT: My Number 18 on page 14.

MR. CORRIGAN: Our paragraphs are not numbered.
MR. TRAINI: It's not a numbered paragraph.
THE COURT: Page 14.
MR. CORRIGAN: Thank you, your Honor.
THE COURT: It fits in the string of 1 through 6. It will be Number 7. Okay. All right. Now we come to the substantive. I took the same order that I used in preliminary instructions, which I thought was good, submitted by the Defendants in this case to start with the substantive mail fraud counts and then to go into the conspiracy count.
Number 1 on page 15, this is part B now, and we may renumber these, so don't be thrown if you see different numbers -- well, you won't see them; but if I renumber these, Number 1 simply sets forth that there are 23 counts in this case. Does anybody have a problem with Number 1 in part B?
MR. PETALAS: No, your Honor.
THE COURT: Number 2 on page 16, I actually struck after you saw this the second paragraph of Number 2 because I've already told them that and don't need to repeat it there.
MR. TRAINI: The one that's in here now, that "as I instructed," your Honor?
THE COURT: Yes. Then we go into 2A, and that's

why these may get renumbered. That just sets forth the check numbers and dates. B and C spell out the statutes. D sets forth the elements of the offense, which I thought both of you were in agreement on.

E describes a scheme to defraud in general terms. F describes knowing and willfully, and I don't think there was any dispute about that.

MR. PETALAS: That's correct.

THE COURT: G on the intent to defraud, I thought also there was no disagreement. H on the intent to deprive of honest services, does anyone have any problem with H on page 20?

MR. PETALAS: Your Honor, the --

THE COURT: There's a typo.

MR. TRAINI: It may be the same one that we have, Judge.

THE COURT: "He."

MR. PETALAS: This second paragraph of page 20, your Honor, beginning under "either of the approaches above."

THE COURT: Yes.

MR. PETALAS: The Government has an issue with the statement that the jury must consider Rhode Island state law for the reasons that I think that we've discussed previously. It's our view at least that the

Rhode Island state law does not serve as an affirmative defense to the federal crime.

THE COURT: I think what I may do, I had, as I was reviewing these earlier, had bracketed that paragraph, and I may take it out because the next section takes care of it.

MR. CORRIGAN: Your Honor, we would object to that. *Urciuoli* was clear that state law always applies in the intent setting. We are in an intent section of the instruction. And even this office, this United States Attorney's Office in the *Urciuoli* appeal conceded that state law was to be considered as it related to intent.

So this would be a 180-degree reversal by this United States Attorney's Office, and it would also be contrary to the mandate of the *Urciuoli* Court.

MR. PETALAS: Your Honor, our response would be that that's not true. As worded, it says currently they must consider Rhode Island state law. Our position has been that state law can be considered as it relates to the Defendants' intent.

In other words, it may be considered by the jury; but whatever weight the jury wishes to give it to the Defendants' intent, whatever evidence came in --

THE COURT: That would tell the jury that it's

optional.

MR. PETALAS: Well, I think it's like other evidence of intent.

THE COURT: It's not optional.

MR. PETALAS: I think that's where we would disagree. We believe that the jury may consider it in the way that Judge Torres instructed in *Urciuoli;* that whatever evidence came in of the Defendants' knowledge of whatever the state of the rules were in Rhode Island, that may be considered along with all the other evidence relating to their intent in determining whether they had the necessary intent.

As it reads now, my concern is that it reads that if the jury believes, you know, the ethics or the class exception applies, then the Defendants didn't have the intent.

THE COURT: No, that's not what the instruction says. And if you go to the next section, that's exactly what I was attempting to do, was to put it in proper perspective.

MR. PETALAS: Certainly.

THE COURT: But when I was reading this earlier, as I said, I had some concerns as to whether it belongs there or whether it's taken care of in the next section.

Now, Mr. Corrigan says it's got to be here because it deals with the intent, so we'll leave it in for now. I mean, I don't think you can have it both ways, Mr. Petalas.

MR. PETALAS: My concern, your Honor, is simply the you must consider state law. It seems to the Government that we wouldn't tell them what facts relating to intent they must consider. They should consider all of the evidence and weigh it as they see appropriate, and so that's my concern.

THE COURT: Well, I could soften it by saying you should consider state law.

MR. CORRIGAN: But, your Honor, this is an instruction on the law. You wouldn't tell them that they should consider anything else in these instructions. These are legal instructions the Court is giving to the jury.

THE COURT: Let me think about that one, but I'm certainly not going to say you may.

MR. PETALAS: Okay.

THE COURT: You know, you interjected into this case the class exception. That's there. It's like the pink elephant in the room, and I have to understand what to do with it, and I think *Urciuoli* requires me to tell them what to do with it. So it's in for now.

I'll have to think about it.

MR. CORRIGAN: Your Honor, one --

THE COURT: Do you have any problem with the rest of that?

MR. CORRIGAN: We don't -- I don't have a problem with any of the substantive language, just in a housekeeping sort of way. This phrase is, "You must, again, consider Rhode Island state law," and I don't know that we've mentioned Rhode Island state law.

THE COURT: I don't think we have. I think that got lifted from a section that was in different order, so we can take the "again" out.

What I was going to do was to add a line because then I break away from that thought and say I'll instruct you on Rhode Island law in just a moment because the next section deals with Rhode Island law. So that's the only thing that may change there.

Anyone else have a problem with anything else in that section?

MR. PETALAS: The other issue in that section that I wanted to raise with the Court, your Honor, is the final paragraph relating to the right of private citizens to address grievances to the public officials.

My concern is that this is written -- I don't have a dispute with what the Court instructs, with the

accuracy of what the Court instructs. My concern, rather, has to do with the jury again believing that this is, if they find all of the elements of honest services fraud, nonetheless believing that this would excuse the conduct.

THE COURT: If they find all the elements of honest services fraud, they find an intent to improperly influence.

MR. PETALAS: Agreed. So my suggestion was, for the Court's consideration, following the end of that paragraph, to say something to the effect of, however, you know, providing payments or benefits with the intent to influence may constitute such a deprivation, in other words, you know, it's not just one way.

THE COURT: No, no, because I've already told them what they have to find and what you have to prove.

MR. PETALAS: Okay.

THE COURT: What this tells them is that if they find something short of that, that these two guys were simply bringing to the attention of a state legislator information regarding legislation they had some interest in and that was the end of it, then that's permissible.

If they were taking him golfing because they wanted to make sure that he took a walk or that he

voted in a particular way on some particular legislation that is different from what he would have done ordinarily, then they're guilty. So I think that's covered.

MR. PETALAS: Okay.

THE COURT: The next one is subsection I, which is the class exception. And I should tell you that I added a phrase at the very end of it to try to balance it out a little bit.

MR. TRAINI: That's the piece that we wanted you to take out, Judge.

THE COURT: The balancing part.

MR. TRAINI: Well, it isn't --

THE COURT: Let's go through the rest of it before we get there, but I figured I was going to get some reaction to that.

Does the Government have any particular problems with this section other than that you don't think I should give it at all?

MR. PETALAS: Aside from that, your Honor, I guess there's two or three concerns that I'd like to broach. One is I believe it's more discursive than really is necessary in that it relates a lot of facts that are not strictly law, and I would not include some of those additional matters.

THE COURT: Such as?

MR. PETALAS: Your Honor, I think our first objection was related to the first paragraph, but I think the discursive issue goes to the second and third. I would recommend that the second sentence of the second paragraph be stricken and also that the narrative simply pick up beginning with "Rhode Island state legislators" in the next sentence.

And I would also ask that the Court strike the statement that, at the end of that sentence, "and are paid only modestly for their work as legislators" and then pick up with the next sentence instead.

THE COURT: Well, they know that. They know that. You introduced or somebody introduced his tax records that show what he made as a legislator.

MR. PETALAS: I don't dispute that they are paid modestly. I just -- my suggestion is just that it's really not necessary to the charge.

THE COURT: It probably isn't, but --

MR. PETALAS: I understand.

MR. CORRIGAN: Your Honor, if we may be heard on that. The issue here is that this is such a unique setting in that even Rhode Island citizens, the folks that we've encountered, not all of them understand that this setting here in Rhode Island is as unique as it

is, and they think --

THE COURT: It's not all that unique. There are other part-time legislators around the -- legislatures around the country. So it's not unique, but I do think that I have to deal with this in some way because they've heard so much about it.

So let the Government finish in going through this to see what else he has a problem with.

MR. PETALAS: I had the same issue with the first sentence of the next paragraph relating to, it says, "this concept of a citizen legislature" and continues about it being a --

THE COURT: Yes.

MR. PETALAS: I would recommend that it simply read "this situation may result in instances where a certain piece of legislation," so, in other words, to delete the additional information.

THE COURT: Okay.

MR. PETALAS: And at the close of that sentence, my recommendation would be to go straight to "Rhode Island state law contains a provision known as a class exception." It should go right to the point that the Court wants to instruct on.

THE COURT: So you'd eliminate the sentence between "under certain circumstances, they can still

participate"?

MR. PETALAS: Right, because I think that the next section explains that.

THE COURT: Okay. When I say okay, that doesn't mean I'm doing it. That means I've heard what you said.

MR. PETALAS: I understand.

THE COURT: What's the next one?

MR. PETALAS: Our other points are more -- it's less narrative and more just another point. We believe that if the Court intends to instruct on the class exception, that the Court should also instruct on Section 6 of the Code of Ethics, which is the section that, in fact, requires legislators under circumstances where it may or reasonably looks like there could be a conflict to, in fact, file a sworn written statement explaining the conflict, explaining why they can act nonetheless, in other words, because of the application of the class exception.

And we would recommend that in addition to the provision related to the class exception that the provision related to Section 6 disclosures also be included.

THE COURT: Do you have some language?

MR. PETALAS: I do, your Honor. What I did is

when we received the Court's draft, I haven't -- it's rather informal, but it's just a write-up of that section.

THE COURT: Do you have a copy for the other side?

MR. PETALAS: I do. I sat down and wrote it up for the Court's consideration.

THE COURT: Okay. Make sure you electronically file that as a supplemental.

MR. PETALAS: Will do. And I can provide the Court and parties with a black line if that would also be of assistance. I just didn't have a chance to do that.

THE COURT: First let me ask the Defendants what you think about I think it's the last paragraph on that first page that talks about the Section 6 requirement.

MR. CORRIGAN: A couple of points on this, your Honor. Number one, there has been no evidence introduced in this case at all about what Mr. Celona did or did not do after he took any action on any pieces of legislation.

THE COURT: You can stop right there. That's the problem with including that instruction. There's been no evidence whatsoever on whether or not he filed the Section 6 in this case. He was asked about it in

grand jury, but no one ever asked him that question here.

MR. PETALAS: And I'll defer to Mr. Dambruch on that, but I thought there was some testimony related to getting a writing. And I don't know what that testimony -- I don't recall right now exactly how that testimony --

THE COURT: That related to him getting a written opinion from the Ethics Commission.

MR. PETALAS: An advisory opinion.

THE COURT: Correct. There was absolutely nothing introduced at trial that dealt with the Section 6 disclosure issue. You asked him about it at grand jury, may have asked him about it in *Urciuoli*, but he was not asked that question here.

So giving an instruction on something for which there's no factual basis I think is a mistake on my part, so that's a no.

MR. PETALAS: The other issue I would just point out, or I don't want to belabor that, but it's been our view that what these Defendants learned from Celona was very limited related to the ethics rules and, however, nonetheless, the Court is going to instruct much more fully on the state of the ethics rules, particularly the class exception.

THE COURT: But the class exception is what he described. Depending upon which version of what he testified he said to the Defendants, he at least once said and described the class exception. So there is a factual predicate for my giving that charge so they know what to do with it.

MR. PETALAS: I understand, but what I would call the Court's attention to, and I only have one copy of this and it's got notes, but I can give it to the Court if you'd like, this is one of the general commission advisory opinions. It's Advisory Opinion Number 13 from '92 which addresses the issue of the class exception, and it points out what the purpose of the class exception is.

It's based on the fact that the public does or should know what it is the legislator does for a living. And accordingly, if they don't want a legislator who does that for a living, they can vote for the opponent.

And I think the point there is, there is a method that the Code of Ethics provides to make a public disclosure of the conflict, that is the Section 6 notice.

THE COURT: I think you're missing the point, Mr. Petalas.

MR. PETALAS: I may be, your Honor.
THE COURT: You never elicited any factual basis for my giving that instruction. You could have. Celona admitted he knew he was supposed to file the Section 6, and he never did it; but you never raised that during trial.
So to give an instruction where there's no facts in the case to support it I think is a mistake. You've made your case, you can make it again on Friday, but there's not a basis to give it in this case.
MR. PETALAS: I understand.
THE COURT: Was there anything else about that section that the Government had a problem with? I think you had the same language in your last paragraph.
MR. PETALAS: That's correct. The only -- I don't want to -- I also tried to condense some of the other discussion about whose duty it was into a more straightforward statement. It's in the statement.
THE COURT: I'll take a look at what you've said.
MR. PETALAS: The final thing that I added to my statement relates to the issue that I think the Court tried to address with its final paragraph, and we are in favor of the Court's final paragraph, but we would just ask that in addition the Court consider some

language to the effect that this is a federal crime and the Government is not required to show a violation of state law to prove the crime.

THE COURT: Let me think about that.

MR. PETALAS: Certainly.

MR. CORRIGAN: There are a couple of items, your Honor, that were in the instructions that we proposed that have been struck from the Court's proposed instructions, and I won't recite them in detail. I think you know what they are.

THE COURT: But you need to refer to them by number so that this conference makes sense.

MR. CORRIGAN: Absolutely. The number -- our Instruction Number 6, which was at page 10.

THE COURT: Just a second.

MR. CORRIGAN: Excuse me, page 9. At the end of the second paragraph, the Court has struck the clause "including working as in this case for private entities."

THE COURT: I'm sorry, page 9?

MR. CORRIGAN: Page 9.

THE COURT: That's staying out. Okay.

MR. CORRIGAN: Then on the next page of the Defendants' proposed instructions, your Honor, the paragraph beginning "under Rhode Island state law."

THE COURT: Yes.
MR. CORRIGAN: The Court struck the last sentence beginning "in 1999."
THE COURT: Yes.
MR. CORRIGAN: And so those are two objections, and then --
THE COURT: That stays out.
MR. CORRIGAN: Yes. And then on the last paragraph of the -- excuse me, the next paragraph of the proposed instruction at page 10, the paragraph beginning "here the Defendants are not legislators."
THE COURT: Right.
MR. CORRIGAN: That has been struck from the Court's proposed instructions as well.
THE COURT: Right, and it stays out.
MR. CORRIGAN: A couple of other items, your Honor. One is that in the --
THE COURT: When I say it stays out, unless the Government absolutely wants it in. I don't hear Mr. Petalas jumping up and down.
MR. PETALAS: No, we don't want it in.
MR. CORRIGAN: In the third paragraph, your Honor, at the end.
THE COURT: On which page, please?
MR. CORRIGAN: On page 22 of the Court's

instructions. This is --

THE COURT: The one that begins "although it may have been"?

MR. CORRIGAN: I'm sorry. The third -- at the top of page 22, the paragraph that spills over from 21.

THE COURT: Yes.

MR. CORRIGAN: There's -- the last clause of that paragraph is "such as all teachers or retailers alike." We'd submit that "retailers" be substituted with the word "pharmacies." That's been -- in this case the jury has heard about teachers and pharmacies. They haven't heard about retailers.

MR. PETALAS: This is one of the pieces that we had wanted to remove; but setting aside that objection, if the Court's inclined to include this, my only concern would be that the facts as presented in the instructions should be careful not to include facts of the case, as the Court knows, and so that's the issue.

THE COURT: Except that "retailers" is a more innocuous -- I don't think if I substitute "retailers" there it's going to make a huge difference other than that the jury may not know what a retailer is.

MR. PETALAS: That's fine, your Honor.

MR. CORRIGAN: Also, your Honor, we have some additional language that we propose for the

instruction, and that's in bold in this document. Do you have a copy?

MR. TRAINI: I don't have a clean one.

THE COURT: This is new?

MR. TRAINI: A new sentence in the middle of that "under Rhode Island state law" paragraph, your Honor.

THE COURT: Are we still on page 22?

MR. TRAINI: We are, your Honor.

MR. CORRIGAN: The "under Rhode Island state law" paragraph.

THE COURT: Mr. Petalas?

MR. PETALAS: I would object to the inclusion of it, your Honor.

THE COURT: Why do you think you need this?

MR. CORRIGAN: Well, in this case, your Honor, there has been discussion about what the opinion was that Mr. Celona received, was it oral, should he have gotten it in writing.

The conversation with the Providence Journal reporter along with Mr. Andrews and Mr. Ortiz I think highlights the distinction between written versus oral opinion, and --

THE COURT: But I think that you oversimplify the state of the law.

MR. TRAINI: In what respect, Judge?

THE COURT: What this suggests to the jury is that an oral opinion is as good as a written opinion. And as I understand the law, that's not so. Even Celona understood that.

MR. TRAINI: What we're not trying to do is suggest that an oral opinion is as good as a written opinion.

THE COURT: But I think that this does suggest that. What I would prefer to do is leave it as is. If there's a question on written versus oral, I'll deal with it by reference to the state statute.

MR. TRAINI: If I could just have one second, your Honor.

THE COURT: For attorneys, this is -- an ethics opinion, if it's oral and you abide by it, you are not protected from further prosecution. If it's written and you act in accordance with the written opinion, you are immunized from further prosecution.

I understood that the state statute on the Ethics Commission was similar, although it may not be as clear as what I've just stated; but does anybody here know that?

MR. TRAINI: Yes, your Honor. It's not as clear as you stated, but it is the case. It's a safe harbor

provision. If you get it in writing and you abide by it and there's something -- as a matter of fact, the --

THE COURT: Do you have the provision handy?

MR. TRAINI: This is the provision from the Ethics Commission Web site which describes exactly --

THE COURT: But I would want the statute.

MR. TRAINI: But -- I understand that, your Honor, and I don't remember how clear it is in the statute; but it's clear in the -- in what they explain to a legislator; but in any event, it's similar to the one that we have.

THE COURT: Let's just look. I don't think this addresses specifically the effect of an oral opinion.

MR. TRAINI: It wouldn't, your Honor. And the reason we asked for that piece, that sentence, was because I believe, and I stand to be corrected, but my memory is that somewhere in his testimony Mr. Celona said something to the effect that he should have gotten it in writing.

THE COURT: You know, hindsight is 20/20. He did say that.

MR. TRAINI: And so my concern, Judge, is that -- I'm sorry.

THE COURT: But if the state law isn't clear, I mean, somebody's got to point me to a provision of the

statute.

MR. TRAINI: What I'm trying to do is avoid the problem that the jury may think that by not having gotten it in writing, it was either invalid or no good, what he got on the phone.

THE COURT: I understand.

MR. TRAINI: And that's the reason why that sentence is there, and I think it solves that problem without suggesting the value of the opinion because you don't have to get one in writing unless you want the safe harbor.

THE COURT: You need to give me a copy of the statute that tells me how oral opinions are treated.

MR. TRAINI: Well, I don't believe, your Honor, if my memory serves, and I'll try to find it right now, but I don't believe that the statute addresses oral opinions at all.

MR. CORRIGAN: I don't think that it does, and that's why this language says there's no express requirement that such guidance be provided in writing. Not only is there no express guidance about written opinions, there's no express guidance about oral opinions.

There's this practice that has evolved, it seems, with the Ethics Commission; and the best I think

we could point you to, your Honor, is the testimony of Jason Gramitt, who is an attorney at the Ethics Commission who testified in the Rhode Island state grand jury about this and about oral opinions that the Ethics Commission gives and the safe harbor.

But the statute, if my memory serves me correctly, is silent on this. But what we're trying to point out here is that -- the silence is what we're trying to capture with this sentence, and that is the statute does not mandate that an opinion be in writing and the practice has been you can call up and get oral opinions.

THE COURT: Mr. Petalas?

MR. PETALAS: Can I talk to Steve for one moment, your Honor? Thank you.

THE COURT: Of course.

(Pause)

MR. PETALAS: Thank you, your Honor. I can't represent to the Court that I know the answer to the question whether there's a difference. It was our opinion that they're not the same; but until we have a chance to look at the statute, it's hard for us to know if we're right in that regard or not.

So if the Court will permit us to go back and do that research, we'll do that.

THE COURT: I think both sides need to do that. I think it's probably, as Mr. Traini has represented to the Court, that it's about as clear as mud. And as I say, my experience was with the attorney ethics advisory panel where it's clearly spelled out that oral opinions aren't -- are worth the paper they're printed on, just about.

But the state statute, if you can point me somewhere -- I understand what your problem is because he raised it in his testimony. I knew I should have gone and gotten the written one, but I didn't and so on. So I may have to deal with it, but I'll try to deal with it in as an innocuous way as I can.

Okay. Anything else in that section?

MR. CORRIGAN: Yes. In the paragraph that the Court struck from our proposed instructions, which were at page 10 of our proposed instructions, the Defendants' proposed instructions, the paragraph beginning "here the Defendants are not legislators."

THE COURT: Yes.

MR. CORRIGAN: In the document that we just handed to the Court and to Mr. Petalas, we had proposed an additional Number 3, which is in bold in the document that we handed up to the Court. And that reads "whether the legislator is required to make or

has made disclosures to the Ethics Commission."

THE COURT: I think I didn't include that entire paragraph.

MR. CORRIGAN: You did strike that entire paragraph, your Honor.

THE COURT: And that's going to stay out.

MR. TRAINI: We just want the record to reflect, Judge, that it's being stricken as Mr. Corrigan would have just amended it.

THE COURT: Right, but he needs to file a supplemental so that the record is clear.

MR. CORRIGAN: Your Honor, as soon as the conference is over, we will file electronically all of the instructions we've handed to the Court and Mr. Petalas.

THE COURT: Okay. When I say no, Mr. Petalas, if you think it ought to be in, I want you to tell me that.

MR. PETALAS: Oh, I understand. I don't think it should be.

THE COURT: Don't sit there and let me say no.

MR. CORRIGAN: Yes, please.

MR. PETALAS: I understand, and we concur with the Court.

THE COURT: I'm saying no because I think it

doesn't belong there; but if the Government wants it and the defense wants it, it's going in, even if I don't want it.

MR. CORRIGAN: Thank you for reminding Mr. Petalas of that, your Honor.

THE COURT: Very good. Okay. Your next one?

MR. CORRIGAN: On this section --

THE COURT: You don't like the last paragraph.

MR. CORRIGAN: We don't.

THE COURT: Let me tell you what I was trying to do, and I am open to suggestions on different language. I think in order to balance this out, I think that the jury needs to be reminded of what they're doing here.

They're not here to decide whether or not Celona should have filed a Section 6. They're here to decide whether or not, with the class exception as a background, these two individuals fully intended by giving him money and giving him golf trips and giving him a job that he be influenced to act in a particular way which was not necessarily in keeping with his obligations to the people of this state. That's what I was trying to accomplish.

So I'm open to suggestions on a different paragraph if you can come up with some language.

MR. CORRIGAN: Your Honor, the way you just

described it struck me a lot better right now than this language did. And I think that the idea that you have of being that I've given you this instruction on Rhode Island state law, you are not to determine whether or not Rhode Island state law has been complied with here, you are here to decide whether or not the Government has proven beyond a reasonable doubt all of the elements of the crimes charged against the Defendants.

THE COURT: Do you have a problem with that?

MR. PETALAS: I do not.

THE COURT: As a closing paragraph. Great. Great. You got all of that, right, Patrick?

MR. CUNNINGHAM: Yes.

THE COURT: Thankfully Karen is taking it down. I will substitute that last paragraph for what I have here. You know what I was trying to get at, as I say.

MR. PETALAS: Just so I make a clear record, I also, like Mr. Corrigan, liked how your Honor put it when you broached the issue with us. And so I don't know that I necessarily would sign on word for word with what Mr. Corrigan just recited, but the concept that the Court noted I think is --

THE COURT: We'll take a look at both, and you may get some amalgam of both of them; but the thought is, I didn't want to leave them hanging with Rhode

Island law and then have -- and not remind them that they really need to take a look at the elements of the offense that we've talked about before.

MR. TRAINI: Maybe we could just let Mr. Corrigan give the charge.

THE COURT: There are many lawyers who have tried to do that.

MR. TRAINI: I know. I wasn't one of them.

THE COURT: But they no longer practice here.

MR. CORRIGAN: Just so the record is clear, I'm not volunteering for that.

THE COURT: Okay. All right. Well, then we'll substitute. Okay. Was that all you had for that one?

MR. TRAINI: Yes, your Honor, but before we get off of that, just to assist you on that previous point, the advisory opinion thing, this is the regulation. It's not a -- I mean, it's part of the statute, but that's the actual Ethics Commission reg.

THE COURT: Well, a regulation might be helpful. It looks to me like --

MR. TRAINI: One more point, just one more. Again, when you're dealing with the Ethics Commission, you do the best you can to try to find out what they're doing. If you go on the Web site again, they have a little blurb on moonlighting, and they talk about what

you can do and what you can't do if you have a public position. And one of the things that they say is, Call the Ethics Commission if you are unclear about your responsibilities. So you can call them --

THE COURT: And they say get a written opinion.

MR. TRAINI: Or they say what they told him, but --

THE COURT: Yes.

MR. TRAINI: I don't think if they meant to say in every case get a written opinion that they would tell you to call.

THE COURT: Okay.

MR. TRAINI: The fact is that that's the way it works over there.

THE COURT: I understand, and it doesn't prevent lawyers from calling and getting oral opinions either. I mean, that's just the nature of the beast.

MR. PETALAS: Can I just ask what the regulation was.

MR. TRAINI: It's Regulation 1024, Dan.

THE COURT: It talks about a written opinion. It doesn't talk about the legal effect of an oral opinion, so it literally leaves it hanging. Okay.

Page 23, sections J and K, does anyone have a problem with it? First the Government.

MR. PETALAS: Your Honor, just one moment.
THE COURT: Okay.
MR. PETALAS: No, your Honor.
MR. CORRIGAN: Your Honor, with this instruction, I understand your intent to deceive instruction, this is your *Potter* instruction.
THE COURT: Yes.
MR. CORRIGAN: Both the Government and the Defendants proposed an intent to deceive instruction that was identical for the first three paragraphs, and then we parted ways in the fourth paragraph. What I'd like --
THE COURT: What number was it on yours, please?
MR. CORRIGAN: On ours it was Number 11, page 18; and the Government's, I think it was 14 at page 15.
MR. PETALAS: That's right.
THE COURT: And the Government's was number what, please?
MR. CORRIGAN: Number 14 for the Government at page 15.
THE COURT: And you parted ways --
MR. CORRIGAN: At paragraph 4.
THE COURT: Okay. Okay.
MR. CORRIGAN: I don't know, your Honor, if we would be able to reach agreement with the Government on

this charge, but I'd like to have the opportunity to at least try since we got pretty close to one another through the three paragraphs.

THE COURT: So you want the first three paragraphs?

MR. CORRIGAN: Well, your Honor, we wanted all four of the paragraphs.

THE COURT: But both of you want the first three?

MR. CORRIGAN: Well, I'm not prepared to say at this time that I would be -- that the Defendants would be willing to accept the first three without the fourth or some modified version of the fourth which we could work out with the Government.

So if we just maybe put down a marker on this that we may be back to you with language that the Government and the Defendants agree upon because we got three quarters of the way there on this charge.

THE COURT: We'll make a note, but I need that -- let me explain to you what's going to happen. I give a copy of whatever I read to the jury, which means I've got to have whatever you want by tomorrow because then we go through this with a fine-tooth comb to make sure they get a perfect copy. You do not get that.

MR. TRAINI: We don't. I vividly remember the exchange last time. John's laughing over there.

MR. CORRIGAN: We will act with all deliberate speed.

THE COURT: K?

MR. PETALAS: The Government has no problems with K, your Honor.

MR. CORRIGAN: And I think that is true of the defense as well, your Honor.

THE COURT: Okay. L, use of the mails?

MR. PETALAS: No problem, your Honor.

THE COURT: Mr. Corrigan, any problem with L?

MR. CORRIGAN: No, your Honor.

THE COURT: M?

MR. PETALAS: No problem, your Honor.

MR. CORRIGAN: Your Honor, we do have an issue with M. Beginning with the third sentence of M, the sentence that reads, "It is irrelevant whether the public official would have acted as he did regardless of the payments."

We don't believe that it is irrelevant whether Mr. Celona would not have acted on AWP despite the payments. There's evidence in the case that he was told by the then majority leader of the Senate not to vote, and he's given testimony --

THE COURT: I think that that may be too strong. Let me see what we have on that from the pattern instructions. We'll take a look at that. I'll take a look at that.

MR. CORRIGAN: Thank you, your Honor.

THE COURT: And the next page?

MR. CORRIGAN: Yes.

THE COURT: You have a problem with that as well?

MR. CORRIGAN: For a similar reason, your Honor, that there's been testimony and evidence in the case that certain of these pieces of legislation everybody in the State of Rhode Island was embracing.

THE COURT: I may reduce that to one line.

MR. TRAINI: Judge, our suggestion, just for whatever it's worth, on both of those, on the one on 24 and the two sentences on 25 where it starts with "also" and then the one that ends with "in this case," was to simply remove those sentences rather than wordsmith them.

THE COURT: Which? Go back.

MR. TRAINI: On page 24, the one Mr. Corrigan mentioned to you about "it is irrelevant whether the public official."

THE COURT: The second sentence and the third

sentence in?

MR. TRAINI: Right, "it is irrelevant" up to the word "payments," that one sentence, and then over to page 25 where it says "also, you may not consider" up through the third line where it says "charges in the case," those two sentences there.

At least from our perspective, the easiest way to deal with that is to just delete those sentences rather than play with the words.

THE COURT: Let's go back and do it again because I wasn't clear about what you were taking out. On page 24.

MR. TRAINI: On page 24.

THE COURT: You're taking out --

MR. TRAINI: The sentence is, "It is irrelevant whether the public official would have acted as he did regardless of the payments."

THE COURT: You're taking that out. I understand that. What about the next sentence?

MR. TRAINI: I don't think that's a problem, Judge.

THE COURT: So you leave that?

MR. TRAINI: Except for the word "equally" because it wouldn't be necessary.

THE COURT: The next sentence stays in.

MR. TRAINI: Right. And then on page 25, beginning with "also," "Also, you may not consider the merits of the legislation or other official action that the scheme targets when deciding if the Government has met its burden. The merits of the official act are irrelevant to the charges in this case," I think those two sentences. Right?

MR. CORRIGAN: Yes, your Honor.

THE COURT: Mr. Petalas, what do you say about that?

MR. PETALAS: Your Honor, we would oppose removing the sentences. We think those points are actually points that we've made to the Court based on other cases that we've cited in the past and some of our filings.

I understand the Court's and Mr. Corrigan's point about that first sentence given the testimony about Irons.

THE COURT: I think the second sentence probably should come out, the one on page 24, because that I think is confusing because we're telling them that the whole point is to get him to do something other than what he ordinarily would have done. But I disagree with you, Mr. Traini, on the second page.

MR. CORRIGAN: If I may be heard further on

that, your Honor. The entire thrust of the prosecution here is that the payments and the other things of value are what caused Senator Celona to take the official actions he did.

If you're going to tell the jurors that they can't consider whether or not the merits of the legislation were the reason that he took the action he did, we might as well just be telling them they can only consider the payments and the things of value when they're considering why he took the actions that he did.

THE COURT: But I think it -- that's why I think those stay in, because it's not whether the jury thinks that that legislation was a good idea, it's whether Celona did something different and that's what the Defendants wanted him to do.

MR. TRAINI: But that's precisely the problem, Judge, is it goes to their intent because the merits of the legislation is relevant to the question of whether or not they would have intended to do anything.

THE COURT: No, I disagree.

MR. CORRIGAN: I take --

THE COURT: I think you need -- I think if you want to take a shot at rewriting that, I'll look at some alternate language.

MR. CORRIGAN: Where I would like to pick up where Mr. Traini left off is, I don't think it's relevant necessarily to the Defendants' intent. It's more relevant to the intent of Mr. Celona when he took the actions that he did as a senator.

If we're telling the jury that they can't consider that Senator Celona might have done what he did because he thought that the legislation was good for the people of the State of Rhode Island, I think that's doing a huge -- that's very, very prejudicial to the Defendants based on the evidence that has been put in here; that Senator Celona himself has testified that at least with respect to certain of the pieces of legislation that he took action on, everyone was in favor of it, he thought it was a good idea. And if we're going to tell the jurors that they're to disregard that evidence, I think it's -- it just shouldn't be done.

THE COURT: But that's not telling them to disregard the evidence. This goes a step further, and I'm concerned that it may go too far. So if you want to work on something, I'll take a look at it and see if I can come up with some alternate language; but I think that this points them in the wrong direction. It points them to the merits of the legislation that's

under consideration versus what was in Celona's head when he was considering the merits.

MR. CORRIGAN: Well, perhaps a way to cure it is to say the jurors are not to consider whether or not the legislation was good or bad, but they can consider whether those who were involved at the time, what their -- how they viewed or considered the legislation. I think that is relevant.

THE COURT: That's why I say this may need to be reworked. So if you want to work on some language and submit it to me, please do that.

MR. PETALAS: I do think there is one point to be made, which is I don't know that the Government is obligated to prove that the Defendants intended to switch Celona's position necessarily. It could be that the payments were made to ensure.

THE COURT: I understand that.

MR. PETALAS: So that's the concern.

THE COURT: I understand that, and that's why it's a difficult one to do without sending them in the wrong direction. And likewise, if you have some language that you would like to propose, I will take a look at it.

MR. CORRIGAN: Your Honor, when we submit proposed language, how would you like us to do that?

THE COURT: Electronically, and make reference to where it belongs in the draft. That won't work.

MR. CORRIGAN: If we were to use the same heading that your Honor used.

THE COURT: If you use the heading, I think that will be clear enough because the numbers may be off.

MR. CORRIGAN: So the language we were discussing today we would submit with the supplemental instructions we already --

THE COURT: Right. Right. Section N?

MR. PETALAS: No objection from the Government.

MR. CORRIGAN: No objection, your Honor.

THE COURT: Okay. Number 3 deals with conspiracy, 3A is just the statute, 3B are the elements of the offense. I think you all agreed on those.

MR. PETALAS: I believe that's correct.

THE COURT: 3C defines a conspiracy generally.

MR. PETALAS: Your Honor, on the second paragraph of that one, I do have a point. The sentence beginning "it must prove, however, that John Celona and Defendants Kramer and Ortiz in some way or manner."

THE COURT: And/or?

MR. PETALAS: Right. Otherwise no objection, your Honor.

THE COURT: Yes. Mr. Corrigan, Mr. Traini,

you're okay with that?
MR. TRAINI: Well --
THE COURT: Because it could be Celona and/or Ortiz alone or Celona and/or Kramer alone.
MR. TRAINI: Well, except that they charged Kramer and Ortiz with conspiring with each other and with Celona.
THE COURT: I understand that, but the jury is instructed to consider each Defendant separately, and they may find one guilty and one not.
MR. TRAINI: I know that they can, your Honor. I understand that.
THE COURT: But this is what the Government has to prove at bottom. And if I tell them they have to prove it in the conjunctive as opposed to only and not that it's permissible to prove it in the disjunctive, then I think it's a misstatement of the law. It's a good catch, Mr. Petalas.
MR. TRAINI: I remember having this discussion with you with the *Bucavalas* thing the last time we did this, your Honor. So I don't disagree that it's a correct statement of the law. I was just trying to figure out a way to deal with it.
THE COURT: I'll use "and/or."
Anyone have a problem with time period? It is

December '03, and there was a typo in the Indictment. Have you fixed that?

MR. DAMBRUCH: And that document I gave to you yesterday, Judge, we did correct it as well as the redactions. I also corrected the time frame. It now reads December 2003.

MR. PETALAS: Your Honor, that actually raises something -- a memory. I know the Court I believe at some point quotes language relating to the honest services scheme. I just want to make sure that --

THE COURT: I think we fixed it. Didn't we, Zoe? We fixed the '04 to '03?

MS. ARGENTO: Yes, we did.

THE COURT: On page 28, E and F, anyone have a problem with either of those? These are pretty much boilerplate.

MR. PETALAS: No problem, your Honor.

MR. CORRIGAN: None, your Honor.

THE COURT: Over to page 30, G and H.

MR. PETALAS: No problem, your Honor.

MR. CORRIGAN: No problem with G, your Honor, and no problem with H.

THE COURT: At page 31, I have a question for you. I've listed paragraphs 32 through 95. Did any of those change when you made the redactions? Because I'm

not going to read those to them. They will have to refer to the Indictment.

MR. PETALAS: The overt act section?

MR. DAMBRUCH: Yes, we did amend and take out reference to the policies.

THE COURT: I'm going to need a copy of that section so that I can properly reference them.

MR. DAMBRUCH: The document I gave to you --

THE COURT: Somebody handed it up to me yesterday, but I don't have a clue as to where it went. So if you can get me another copy.

MR. DAMBRUCH: I can get you another copy, Judge. What happened is, we redacted I believe it was two full paragraphs, as I recall.

THE COURT: This is on the overt act section?

MR. DAMBRUCH: I believe it was. I believe it was paragraph 60 and 67. I'll have to go back and check, Judge, and it will say on there "intentionally omitted." And with regard to two other paragraphs, I know we took out at defense request a sentence from each or two sentences.

THE COURT: A sentence alone is less of an issue than the numbers.

MR. CORRIGAN: My understanding is, your Honor, the numbering of the Indictment hasn't changed.

MR. DAMBRUCH: We just put "intentionally omitted" next to the number.

THE COURT: Then I may be able to leave it as is. That was my concern there. Otherwise, it is okay with both sides?

MR. PETALAS: Yes, your Honor.

MR. CORRIGAN: Yes.

THE COURT: And J.

MR. PETALAS: That's fine, your Honor.

THE COURT: Now we get to Number 4. Count XXIII just tells them what it is. Section A tells them what the statute says. Section B on the third paragraph, I think I should include "and/or the Rhode Island Student Loan Authority" there.

MR. PETALAS: I agree.

THE COURT: Do you see that, Mr. Corrigan, down at the bottom of the page?

MR. CORRIGAN: Yes, your Honor.

THE COURT: I neglected to include that.

MR. PETALAS: The other thought I had, your Honor, for your consideration is, in the second element, whether it would be advisable to include an agent of the state government or agency thereof.

THE COURT: I think that's right. I'll just say agency of state government. You don't have a problem

with that, Mr. Corrigan?
MR. CORRIGAN: No, although just looking ahead to the fifth paragraph or the fifth element of this on the next page, the state agent --
THE COURT: Or an agency. I think you stipulated to that.
MR. CORRIGAN: Well, we stipulated that the state received benefits of that amount. Okay. We have stipulated to that.
THE COURT: So I think we leave that, and then I define agent anyway down below here. In C, no one has a problem with that? How about D?
MR. PETALAS: Can I ask a question, your Honor?
THE COURT: Yes.
MR. PETALAS: I noticed that you go from the listing of the elements to the second element.
THE COURT: Yes.
MR. PETALAS: I assume the Court didn't instruct specifically on the first element separately on purpose.
THE COURT: I mean, I think it's -- that's not one I really need to expand on, I don't think.
MR. PETALAS: That's fine. No objection to D, your Honor.
THE COURT: Any problem with D, Mr. Corrigan?

MR. CORRIGAN: No, your Honor.

THE COURT: E? I included the "and/or Rhode Island Student Loan Authority" there, also.

MR. PETALAS: Okay.

THE COURT: Mr. Corrigan, with that inclusion, do you have any problem with that one?

MR. CORRIGAN: No, your Honor.

THE COURT: All right. And then on the next page at the top I make reference to your stipulation on the $10,000.

G tells them that they have to be unanimous as to the payment itself.

MR. PETALAS: Your Honor, on the unanimity instruction, as you'll recall from our argument on duplicity, the Government's charged a stream of benefits or course of conduct theory. And so I wonder if specific unanimity as to particular payments in the stream of benefits is, in fact, the appropriate instruction, whether it wouldn't be more appropriate given that charge to instruct that it must be unanimous that the stream of benefits was given in order to reward or influence.

THE COURT: So what is your suggested --

MR. PETALAS: That there be a unanimity instruction but that it not go to each particular

payment that makes up this course of conduct, this stream of benefits.

THE COURT: And I'm asking you, what's your suggested language?

MR. PETALAS: I don't have anything written down right now, if I could submit it.

THE COURT: Just tell me.

MR. PETALAS: My thought would be to pick up "you must unanimously agree on whether the payments or other things of value" and then follow on from there, or it could say "the stream of payments and things of value."

THE COURT: Well, the problem is that if -- Mr. Corrigan, why don't you jump in.

MR. CORRIGAN: Well, the statute itself states, and we have it in the instruction on page 32, "gives, offers, agrees to give anything of value," not any things of value. There has to be unanimity on a particular thing of value.

THE COURT: Mr. Petalas, unless you have some case law that says it should be in the plural or I should use the phrase "stream of payments," it stays as is.

MR. PETALAS: I understand. I'll look back at the cases and let you know if I find something.

THE COURT: Okay. First Circuit only.
MR. PETALAS: Then I think the answer is no. I don't think there's First Circuit law.
THE COURT: Don't give me a Ninth Circuit case. I'll do exactly the opposite.
MR. PETALAS: I think the one I have in mind is Fourth.
THE COURT: Fourth isn't bad, but they're awfully conservative down there.
H, aiding and abetting.
MR. CORRIGAN: Your Honor, before we move to the aiding and abetting, if we could stick with the federal program bribery for a moment. The Defendants had submitted a few proposed instructions.
THE COURT: Tell me where they are.
MR. CORRIGAN: The first is at page 37.
THE COURT: Well, I thought this was taken care of by your stip.
MR. CORRIGAN: It has been taken care of by the stipulation. You're correct. The next one is at page 39. That's the bona fide compensation charge, and that is something that you made reference --
THE COURT: I mention it with respect to what the statute says, but you're right. I didn't give the charge, and we probably ought to give that. So, Zoe,

let's include that one after federal -- between federal funds and unanimity. Let me think about where we're going to put that.

MR. PETALAS: And, your Honor, the Government has no objection to the language that the defense used on that page.

THE COURT: Okay. So that will be in.

MR. TRAINI: We're all set on that one.

THE COURT: How about -- you had another one?

MR. CORRIGAN: No, just the bona fide compensation, your Honor.

THE COURT: Okay. Can we move now to aiding and abetting?

MR. CORRIGAN: Yes, your Honor.

THE COURT: Does anyone have a problem with H?

MR. PETALAS: The Government does not.

THE COURT: Zoe, I think that that letter is in the wrong place. That should be another number. No one had a problem with the aiding and abetting instruction?

MR. CORRIGAN: One moment, your Honor.

THE COURT: Yes.

MR. CORRIGAN: No objection, your Honor.

THE COURT: Okay. And the only things that are left are the unanimous verdict and what to do if they

need to talk with me. Anyone have any problem with either of those?

MR. CORRIGAN: No, your Honor.

MR. TRAINI: Judge, are you still going to give those after?

THE COURT: I was just going to say that for those of you who haven't tried a case with me, generally what I do, so you don't get thrown completely, is before I get to part C, I call you up and ask you if you have any objections to the charge as given, and you have your opportunity then to make your record on any objections that you have.

I don't want to throw you and have you think that I'm completely done. That's when I do it. I then send you back and read those last two because generally nobody has any objection to those anyway. So that's the way it will go.

Now, it's easier and quicker if when you approach with your objections that you can do it by either saying, I object because you didn't give our Instruction Number 15 as filed on X date, so that you don't have to read it.

What I don't want you to do is to read the language into the record at that point.

MR. TRAINI: Are you sure you're okay with that?

Because the last time that happened during *Potter*, I think I said that and you told me to put on the record what it was that you didn't give that I wanted you to give.

THE COURT: I don't know that you had filed everything, though.

MR. TRAINI: I think we did, your Honor. We'll do it whatever way you want.

THE COURT: It just takes so long if you're going to read 12 paragraphs of something that's already on file.

MR. TRAINI: No, we didn't do that, but I just have a memory of -- in fact, I thought that in the first trial you might have even sent the jury out for a minute or something while we put our --

THE COURT: I don't remember that.

MR. TRAINI: But I remember asking if I could do it that way by referring to something that we had already given you, and you said you've got to put it all on.

THE COURT: I may not have actually had you file those at that point in time. That's why I make it a point to tell the lawyers now to file it in writing so it's part of the record and that all you need to do then is to make reference to it by number or page or

whatever so that the Court of Appeals knows that you have preserved it.

MR. TRAINI: That's fine.

THE COURT: If that's where you're going to go. Is there anything else that anyone wants to bring up at this conference?

MR. TRAINI: Can I just have one second?

MR. CORRIGAN: Your Honor, some housekeeping matters that I don't think need to be on the record that we'd like to address with the Court. I don't have a problem putting them on the record.

THE COURT: Sure. Do you want them on or off?

MR. CORRIGAN: I don't, but I think Mr. Petalas wants something on the record.

MR. PETALAS: I want something. Although we've submitted a willful blindness instruction, we've read their objection, and we're not going to push for that.

THE COURT: Very good, because you weren't going to get it.

MR. PETALAS: We aren't that willfully blind, your Honor.

THE COURT: Now you want to go off?

MR. CORRIGAN: Yes.

(Discussion held off the record)

(Adjourned)

C E R T I F I C A T I O N

I, Karen M. Wischnowsky, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Karen M. Wischnowsky________________

Karen M. Wischnowsky, RPR-RMR-CRR

June 13, 2008

Date